[No. 44746.   En Banc.   March 9, 1978.]

THE STATE OF WASHINGTON, ET AL, *Respondents,* v.
VIRGINIA MACK, *Appellant.*

ROBERT A. SPOONER, *Appellant,* v. THE STATE OF
WASHINGTON, ET AL, *Respondents.*

DANIEL LEE HENDRICKSON, *Appellant,* v. THE STATE
OF WASHINGTON, ET AL, *Respondents.*

*Stephen L. Wanderer* (of *Walstead, Mertsching, Husemoen, Donaldson & Barlow*), for appellants.

*Paul R. Roesch, Jr.,* and *Studley, Purcell, Spencer & Guinn,* for respondents City of Longview and Albers.

*Henry R. Dunn, Prosecuting Attorney,* and *Robin M. Force, Deputy,* for respondents District Court for Cowlitz County, et al.

STAFFORD, J.—This is a consolidated appeal from three Superior Court determinations that "good cause" existed for setting appellants' trials more than 60 days after their appearances in courts of limited jurisdiction. We reverse the Superior Court.

Appellants Mack and Spooner were separately charged with misdemeanors in the Longview Municipal Court located in Cowlitz County. Appellant Hendrickson was similarly charged in the Cowlitz County District Court. Following an appearance in court each appellant requested a jury trial and in each case the trial date was set well

beyond the 60–day limit provided in JCrR 3.08. The clerk, who acted for both courts, "understood" it was the courts' policy that a jury demand waived the 60–day requirement. It should be noted that existing trial settings and the judges' schedules also made compliance with the 60–day rule "difficult."

Counsel for appellants Mack and Spooner then specifically requested a trial date *within* the required 60 days. Counsel for Hendrickson asked that all his pending cases be tried *within* 60 days.[1] *After* 60 days had elapsed, each appellant filed a motion to dismiss. Following denial of their motions, appellants petitioned the Cowlitz County Superior Court for a writ to prohibit the respective courts from proceeding to trial. Each petition was denied and appellants have appealed.

The first issue before us concerns the remedy by which appellants may seek relief from the original interlocutory orders denying their motions to dismiss. Respondents argue that relief by writ of prohibition is improper because appellants could have sought relief by appeal to the Superior Court. It is said that a trial de novo in Superior Court would afford appellants a plain, speedy and adequate remedy which precludes relief by extraordinary writ. This argument begs the question. A trial de novo would subject

---

[1]Hendrickson's first appearance was September 18, 1975. A request for jury trial was made September 24. On October 9, the case was set for trial on December 2, 1975, *well beyond* the required 60 days. On October 9, *well within* the 60–day period, appellant's counsel requested that all of his then–pending cases be set within 60 days of appearance. The request was not granted. Finally on November 5 and without notice to appellant, the clerk informed appellant's counsel that a jury trial setting was possible the following day, November 6. The record indicates appellant and his counsel could have been *present,* but even respondent concedes that appellant's counsel stated "he could not prepare to go to trial on such short notice." Since respondent does not seriously urge that this subsequent trial date complied with JCrR 3.08, we need not reach the issue. Respondent does suggest that the November 6 trial date converts the original trial setting of December 2 into a "date certain" so that we should be concerned with the "good cause" requirements for continuances under JCrR 3.08. This argument is also without merit because we are not presented with a continuance to a date certain; rather, this record only concerns the initial trial setting.

appellants to the very trial they seek to avoid. Further, a trial de novo would reach the merits of the misdemeanor charges, but not the propriety of the interlocutory orders. *See State v. Ladiges,* 66 Wn.2d 273, 401 P.2d 977 (1965); *State v. Miller,* 59 Wn.2d 27, 365 P.2d 612 (1961). Consequently, appellants properly raised the dismissal issue by means of an extraordinary writ.

Turning next to the merits of the Superior Court's adverse rulings, the court denied the petitions for a writ of prohibition after determining that "good cause" existed to allow trial dates more than 60 days after the appellants' appearances. The "good cause" in each instance consisted of "difficulties inherent in jury selection," "docket congestion," and the "trial schedules" of the judges of the courts of limited jurisdiction. The records indicate that the "good cause" also included a concern for minimizing expense. This concern was reflected in the courts' failure to use judges pro tempore, failure to "double" set cases, and failure to employ more efficient jury selection procedures or revised calendar preparation.

We are asked to determine whether any of the foregoing factors constitute "good cause," under JCrR 3.08, to warrant denying the motions to dismiss. JCrR 3.08 provides:

> Continuances may be granted to either party for good cause shown. Also, the court, on its own motion, may postpone the trial for good and sufficient reason. In either case, the continuance or postponement must be to a date certain. *If the defendant is not brought to trial within 60 days from the date of appearance,* except where the postponement was requested by the defendant, *the court shall order the complaint to be dismissed, unless good cause to the contrary is shown.* Dismissal under such circumstances shall be a bar to further prosecution for the offense charged.

(Italics ours.) The threshold question is whether the rule should be construed consistently with CrR 3.3, its superior court counterpart.

■■ The purpose underlying both CrR 3.3 and JCrR 3.08 is protection of the defendant's constitutional right to

a speedy trial. *State v. Cummings,* 87 Wn.2d 612, 615, 555 P.2d 835 (1976); *State v. Williams,* 85 Wn.2d 29, 32, 530 P.2d 225 (1975); *State v. Bepple,* 14 Wn. App. 491, 493, 542 P.2d 1260 (1975); Criminal Rules Task Force, *Washington Proposed Rules of Criminal Procedure* 29–33 (1971) (hereafter Task Force). *See also* ABA Standards Relating to Speedy Trial § 2.1 (Approved Draft 1968) (hereafter ABA Standards). The rules are designed to *protect, not guarantee,* this constitutional right. *Seattle v. Crockett,* 87 Wn.2d 253, 257–58, 551 P.2d 740 (1976). We also recognized in *Crockett* at page 256:

> the procedural rules applicable to superior courts and courts of limited jurisdiction must be considered as a whole and cannot be sliced up, then construed and applied piece by piece to the resolution of issues that develop from or are related to the judicial process. The criminal rules must be viewed in relation to both the type of procedure involved and the totality of their purpose, which is to secure simple and fair as well as inexpensive and effective justice. CrR 1.1, 1.2; JCrR 1.02; JAR 2. The rules were designed to operate in conjunction with one another and not to require meaningless and useless duplication.

The identity of purpose, together with the philosophy enunciated in *Crockett,* warrants our construction of both rules in a consistent manner. Another reason exists for consistent construction, however. The very purpose of redrafting the rules of criminal procedure was to reform, modernize and *integrate* the criminal procedure rules of *all* courts. *See* ABA Standards § 1.1; Task Force Report at page viii.

Respondents suggest that the failure to specifically amend JCrR 3.08 indicates that it should be construed in accordance with RCW 10.46.010, rather than in harmony with CrR 3.3. This contention is without merit. First, the argument ignores the harmonizing purpose in amending the procedural rules applicable to criminal cases.[2] *See* Task

---

[2]Only those rules for courts of limited jurisdiction felt to be inconsistent with the new superior court rules were amended. JCrR 3.08 was not deemed inconsistent with such rules and thus was not revised.

Force Report at page viii. Second we have previously held that RCW 10.46.010 is superseded by CrR 3.3 and JCrR 3.08 insofar as it purports to deal with speedy trials. *State v. Cummings, supra* at 615; *State v. Williams, supra* at 32. Contrary to respondents' suggestion, we do not intend to resurrect RCW 10.46.010 and apply it to JCrR 3.08.

Respondent also suggests that JCrR 3.08 be construed under the constitutional standards for protection of a defendant's constitutional right to a speedy trial. *See State v. Christensen*, 75 Wn.2d 678, 453 P.2d 644 (1969). This is unnecessary. Neither CrR 3.3 nor JCrR 3.08 is intended to operate as *the* standard against which to measure possible violation of this constitutional right. Rather, as we have indicated, the rules are designed to *protect* but not *guarantee* the right. For example, a violation of JCrR 3.08 is not necessarily a violation of the constitutional right, just as violation of that constitutional right *may* not be a violation of JCrR 3.08. *See Seattle v. Crockett, supra* at 257–58.

Since both CrR 3.3 and JCrR 3.08 are intended to *protect* the same constitutional guaranty, and in keeping with the harmonizing purpose of our recent amendment of the criminal rules, we hold JCrR 3.08 is to be interpreted consistently with its superior court counterpart, CrR 3.3.

We now turn to respondents' contention that docket congestion constitutes "good cause" to justify the delayed trial settings now under consideration. We do not agree. The Task Force that promulgated CrR 3.3 stated:

(1) the defendant can be prejudiced by delay, whatever the source; (2) such delays are contrary to the public interest in the prompt disposition of criminal cases; (3) if congestion excuses the long delays, there is lacking sufficient inducement for the state to remedy congestion; and (4) the calendar problems which arise out of trying to make maximum use of existing facilities do not ordinarily require time beyond that otherwise allowed.

Task Force at page 32. *See also* ABA Standards at 27–28; Note, 108 U. Pa. L. Rev. 414, 421 (1960). We agree with the Task Force's observations.

█ In accordance with the philosophy underlying JCrR 3.08, we hold that the docket congestion described as existing in both the Longview Municipal Court and the Cowlitz County District Court was not "good cause" to warrant setting appellants' trials beyond the mandated 60 days. Absent "good cause" for the delay, dismissal is required. *State v. Williams, supra* at 32.

Respondents suggest that cumbersome jury selection procedures[3] excuse some delay in the setting and trial of cases. These procedures, it is said, burden the already crowded court calendars and should be considered "good cause" for failing to meet the 60–day mandate of JCrR 3.08. The argument is without merit. The selection procedure currently used is primarily one voluntarily engaged in by both courts. Much time is lost because jurors fail to appear. Nevertheless, neither court apparently imposes any sanction for a prospective juror's failure to appear. Insofar as the record is concerned, neither court appears to have attempted to modify the current procedure or to adopt a more efficient one. Without question it is the court's duty to arrange for the requested jury trial. *See* CrR 3.3; Task Force Comment to CrR 3.3, at 31; ABA Standards § 1.2. The approach to compliance with JCrR 3.08, evidenced by this record, does not constitute "good cause." Self–created hardship is not an excuse for violating mandatory rules.

Respondents' also suggest the failure to use judges pro tempore to cope with the heavy caseload was based primarily on a concern for the cost. We do not denigrate this admirable concern. But, we note with some interest there is no suggestion that funds generated by the two courts or available to them[4] are insufficient to meet the expense of a ·

---

[3]Both courts use random jury selection followed by a questionnaire to the juror. No subpoenas are issued. Many jurors do not respond to the questionnaire and some do not even appear for trial following the "informal request."

[4]*See* RCW 3.30.090, 3.50.050, 3.50.080–.100, 3.58.010–.050, 3.62.015–.070.

judge pro tempore program. Consequently, this concern is merely docket congestion parading in different form. If this concern were to "justify" extended trial settings, the state or other governmental authority involved would have no inducement to remedy the problem by providing financial relief, authorizing additional judgeships, or by providing additional facilities. We do not agree this concern constitutes "good cause" for delay.

There being nb "good cause" to justify the delayed trial settings, appellants' motion to dismiss should have been granted under JCrR 3.08. The Superior Court for Cowlitz County is reversed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.