[No. 43654-6-I.   Division One.   December 13, 1999.]
NORMAN E. SANDERSON, *Appellant*, v. UNIVERSITY VILLAGE, ET AL., *Respondents*.

---

[14]*Id.* at 283.

*Jay Kinney* of *Grutz, Scott & Kinney*, for appellant.

*Jillian Barron* and *Ellen Timmons Kremer* of *Sebris, Busto, P.S.*, for respondents.

Agid, J. — Norman Sanderson, a former employee on the maintenance crew at University Village, filed suit against the new owner of the complex, University Village Imp., alleging that it denied him employment based on his age and physical disability. Because University Village Imp. has articulated reasonable grounds for its decision not to hire Sanderson and Sanderson has not produced evidence supporting his contention that its explanation was a pretext

for a discrimination, summary judgment was appropriate in this case.

## FACTS

Norman Sanderson worked at University Village from August 1, 1989, to September 15, 1993, as part of a six-person maintenance crew supervised by Larry Lundy. Due to recurring back problems and personal difficulties, Sanderson occasionally missed work and was periodically placed on light duty. In June 1993, he accepted a permanent light duty janitorial position. According to Lundy, Sanderson was "adequately performing" his light duty work in September 1993 when University Village Imp. Limited Partnership purchased University Village.

Winmar Metro Inc., University Village's former operator, notified its employees that, as a result of this acquisition, they would be terminated effective September 18, 1993. But they could interview with the new owner if they wished to continue working at University Village. Valerie Margulis, an employee of a real estate advisory firm hired by University Village Imp. to interview these applicants, got a memorandum from Matt Griffin, an officer of one of the general partners of University Village Imp., which explained that Lundy would continue supervising the maintenance and security groups. She was told that Lundy's references about the current maintenance crew members should "weigh heavily" in her hiring recommendations, but she received no information suggesting that hiring decisions had already been made. She recalls that "the instructions were that [Lundy] and I both had to agree that the person would make a good employee for University Village."

On August 26, 1993, Margulis interviewed Sanderson using a standard list of questions and recording her impressions, as she did with every applicant. Her notes reflect that during the interview, Sanderson described his current job duties and explained that he "love[d] the people, not

the supervisor" at his current position. He referred to Lundy as an "egotistical maniac" and noted that there are "lots of unfinished projects around because of [Lundy's] management style." He added that "[m]orale is very bad." Included in Margulis's notes from the interview are notations which read: "Bob, this man is a troublemaker. Problems with motivation; drinks too much; doesn't want to work; lazy."[1] Margulis stated in her declaration that she did not recall whether she had recommended that University Village Imp. retain Sanderson,[2] but because her recommendation "would have taken into account the comments that are written on this sheet, the general impression that [she] had in [her] mind at the time that [she] interviewed Norm, and the reference as written down here," she surmises that she would have "been doubtful about his sort of team attitude, given his comments" and would not have recommended him. She stresses that she "certainly wouldn't have discriminated on the basis of his back injury" and that she is "certain . . . that none of [her] recommendations [were] based on . . . [his] age[ ]."[3]

Of the six people on Lundy's maintenance crew, University Village Imp. retained four crew members and decided not to hire Sanderson, then age 51, and Laguio Mabini, age 63. Sanderson points out that the four workers retained were all under 40 and claims that he "compares favorably to three of the younger, healthier maintenance workers who were retained." In his complaint against University Village and University Village Imp., Sanderson alleged that he was discriminatorily denied employment in violation of RCW 49.44 and 49.60 and requested damages for past and

---

[1]Margulis originally believed that all these comments came from Bob Jones, Winmar's general manager, but discovered after reviewing her notes more carefully that Jones made only the "troublemaker" reference. The rest of the comments came from Lundy.

[2]Because Sanderson brought this action three years after he was denied employment, Margulis had little independent recollection of what occurred. She consulted notes she kept at the time about the interview and hiring process.

[3]She points out in her declaration that she recommended several employees who were similar in age or considerably older than Sanderson, and notes that Maurice Wyatt, whom she believes she did not recommend, was only 23.

future wage loss and benefits, emotional distress, prejudgment interest, and reasonable costs and attorney fees.

The summons and complaint were served on Janet Bayne, General Manager for University Village Imp., on October 2, 1996. Bayne, who had been working at University Village for less than two months, did not recognize Sanderson's name and was informed by her co-workers that Sanderson had worked for Winmar but had not been hired by University Village Imp. She concluded that the lawsuit was "not related to University Village Imp. Limited Partnership, but to Winmar or Textronix," so she promptly mailed the summons and complaint to Textronix. Because University Village Imp. did not answer the complaint, Sanderson moved for an order of default which the trial court granted on February 20, 1997. On December 23, 1997, Sanderson testified before the trial court about the general and special damages caused by the alleged discrimination, and the court entered a judgment in his favor for $377,995. On March 2, 1998, Bayne received a letter from Sanderson's attorney notifying her of the order and judgment. She then "realize[d] her earlier mistake" and informed University Village Imp.'s attorney about the situation.

On April 6, 1998, University Village Imp. moved to vacate both the order and judgment and included in its motion a declaration by Margulis, her interview notes, and information about University Village Imp.'s hiring process. On May 19, 1998, the trial judge who had entered the default order and judgment vacated them both. Sanderson filed a motion for reconsideration, which the court denied, and the case was assigned to a different judge for trial. The second judge granted University Village Imp.'s motion for summary judgment and denied Sanderson's motion for reconsideration. Sanderson appeals the trial court's orders vacating the default, granting University Village's summary judgment motion, and denying his motions for reconsideration.

Vacation Of Default Order

As previously noted, University Village Imp. did not learn

of Sanderson's discrimination action until October 2, 1998, when his attorney notified it by letter that a $377,995 judgment had been entered against it. Although University Village Imp. promptly moved to vacate both the order and judgment, its April 6 motion was brought over a year after entry of the original default order. Sanderson contends the trial court did not have authority to vacate that order.[4] He relies on Civil Rule 60, which provides that in cases of "mistake" or "excusable neglect" in obtaining a judgment or order, motions for relief from judgment must be brought within "1 year after the judgment, order, or proceeding was entered or taken." University Village Imp. responds that CR 55(c), and not CR 60(b), governs vacation of default orders and that the "one-year limit of CR 60(b) does not apply to a trial court's exercise of its discretion to set aside an order of default." This is correct.

■ CR 60, entitled "Relief from Judgment or Order," imposes a one-year deadline on motions to vacate judgments or orders because of mistake or excusable neglect:

> (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;
>
> . . . .
>
> The motion shall be made within a reasonable time and for reasons (1), (2) or (3) not more than 1 year after the judgment, order, or proceeding was entered or taken.

CR 55(c)(1), however, applies *specifically* to default orders and judgments:

> For good cause shown and upon such terms as the court deems just, the court may set aside an entry of default, and, if a judg-

---

[4]Sanderson does not find fault with the trial court's vacation of the default *judgment* because the motion to vacate was brought within a year of its entry.

ment by default has been entered, may likewise set it aside in accordance with rule 60(b).[5]

University Village Imp. argues that CR 55(c) establishes that "[w]hereas a default judgment may only be vacated in compliance with the requirements of CR 60(b), setting aside an order of default is within the trial court's discretion, and requires only that good cause be shown." We agree that the motions to vacate default *orders* are not subject to a one-year limitation under CR 60(b). If we were to read CR 60(b) as applying to vacating default orders, CR 55(c)(1) would have no application.

Washington courts have recognized that the "Superior Court Civil Rules provide different standards for setting aside orders of default and default judgments,"[6] but they have not expressly endorsed University Village's contention that while motions to vacate default judgments must be brought within one year, motions to vacate orders of default are not subject to the time limitation. We have come close, however. In *Canam Hambro Systems, Inc. v. Horbach*,[7] we held that "[i]In contrast with CR 60(e), which requires that a defendant seeking to vacate a default *judgment* show a meritorious defense to the action, a party seeking to set aside an order of default under CR 55(c) prior to the entry of the judgment need only show good cause."[8] And in *Seek Systems, Inc. v. Lincoln Moving*, we recognized that when a party moves to set aside an order of default, "[t]he applicable rule is CR 55(c)(1), which provides that a trial court may set aside an order of default for good cause shown" and that "[u]nder this rule, whether to set aside an order of default is a decision within the

[5]CR 55(c)(1).

[6]*In re Estate of Stevens*, 94 Wn. App. 20, 30, 971 P.2d 58 (1999).

[7]33 Wn. App. 452, 655 P.2d 1182 (1982).

[8]*Id.* at 453.

discretion of the trial court."[9] These cases support University Village's contention that while vacation of default judgments must comply, as CR 55(c)(1) indicates, with the requirements of CR 60(b), a default order may be vacated subject only to a discretionary "good cause" standard. In addition, we note that federal courts construing nearly identical language in the federal rules have reached this same conclusion[10] that a "motion to set aside an entry of default is not governed by Rule 60(b) . . . or by any express time limits."[11] The trial court correctly concluded that default orders may be vacated upon a showing of good cause under 55(c)(1).[12]

A majority of the panel having concluded that the remainder of this opinion lacks precedential value, it is ordered that only the foregoing will be published. The balance of the opinion will be filed for public record as provided in RCW 2.06.040.

KENNEDY, C.J., and BAKER, J., concur.

---

[9] 63 Wn. App. 266, 271, 818 P.2d 618 (1991). *See also Campbell v. Scannell*, 32 Wn. App. 346, 348, 647 P.2d 529 (1982), in which this court noted that CR 60(b) is applicable "only if a default *judgment* has been entered."

[10] Because the Washington rules were based on the federal rules, federal court interpretation of the federal rules is highly persuasive in determining the effect of Washington's rules. *American Discount Corp. v. Saratoga W., Inc.*, 81 Wn.2d 34, 499 P.2d 869 (1972).

[11] 10A CHARLES ALAN WRIGHT, ET AL. FEDERAL PRACTICE AND PROCEDURE § 2698, at 164 (1998). Federal courts reasonably require, however, that motions to vacate default orders should be made promptly upon discovery of the default. That was not a problem in this case. The motion to vacate was brought a little more than a month after University Village Imp. learned of the order and judgment.

[12] Analysis of RCW 4.72, the provision on which CR 60 was based, is not necessary because CR 55 governs vacation of default orders, and as Sanderson concedes, "CR 55 makes no reference to the one-year limitation of CR 60 or to R.C.W. 4.72.020-.030."