[No. 75092-1.   En Banc.]
Argued January 13, 2005.   Decided April 28, 2005.

THE STATE OF WASHINGTON, *Respondent*, v. ANTHONY OREN FLINN, *Petitioner*.

*Susan F. Wilk* (of *Washington Appellate Project*), for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Andrea R. Vitalich, Deputy,* for respondent.

¶1 FAIRHURST, J. — Anthony Oren Flinn appeals his conviction for possession of an incendiary device. Flinn alleges that the trial court abused its discretion by granting a continuance beyond the time for trial period and by considering the judicial conference in deciding the length of the continuance. We hold that the trial judge granted the continuance for good cause—the State's need to prepare for Flinn's diminished capacity defense—and that five weeks was a reasonable period of time to continue the trial under the circumstances of this case.

## FACTUAL AND PROCEDURAL HISTORY

¶2 On the morning of May 6, 2002, police responded to a tripped burglar alarm and found Flinn on the roof of Meany Middle School with "Molotov Cocktails," bottles stuffed with gasoline-soaked socks. Clerk's Papers (CP) at 3. Based on this incident, the State charged Flinn with attempted second degree arson, possession of an incendiary device, and first degree malicious mischief. Flinn was arraigned on May 21, 2002, and the trial date was set for July 18, 2002. On July 5, 2002, Flinn sought and obtained a continuance until August 14, 2002. On August 2, 2002, Flinn requested and received a second continuance for expert witness preparation until August 21, 2002. On August 21, 2002, Flinn requested a third continuance until September 9, 2002, notified the State of his intent to assert a diminished capacity defense, and gave the State a copy of a report written by Dr. Kenneth Muscatel.

¶3 On September 9, 2002, the State learned for the first time that certain information it requested in discovery did not exist (psychiatric information, videotape, testing information, raw data). The State requested a continuance to

review the materials upon which Dr. Muscatel relied, to interview Dr. Muscatel, and to have a state expert evaluate Flinn. Flinn objected to the State's request for a continuance, arguing that the State had ample time before September 9, 2002, to prepare its case. In response to a question from the judge about how long the State needed to prepare for trial, the following exchange took place:

[STATE]: I'm not certain how long it would take to have a State's expert evaluate the defendant and give us an evaluation. I'm assuming it would be a couple of weeks to get this done.

[JUDGE]: Okay.

[STATE]: And I noted, I mean I noted at Omnibus we talked about what would be a realistic trial date. We had hoped that this would be but I don't think it is. I mean it's now the State does need time to do this.

[JUDGE]: Okay. Well, um, I'm hearing the defendant doesn't want to waive [time for trial] but I'm not hearing an argument that, other than that, there isn't good cause at least to get the State's expert on board. I think it is really a question of how long is a reasonable amount of time under the circumstances.

[FLINN'S COUNSEL]: And, your Honor, I guess for the record, we would object to the Continuance that there isn't good cause—that three weeks was ample time for the State to be prepared for today.

[STATE]: And, your Honor, I would point out that Counsel has had two Continuances of the trial date in order to get an expert on his side to evaluate the defendant.

[JUDGE]: Okay. All right. Tell me if this date will work for you cause I will find good cause for the Continuance under the circumstances but I want to keep it on a short leash but not so short that you have to come back again.

[STATE]: Right.

[JUDGE]: Um, how would October 15th work for both of your schedules?

[FLINN'S COUNSEL]: Wow.

[STATE]: It's acceptable to the State.

[FLINN'S COUNSEL]: We're—

[JUDGE]: Well, let me proffer this as an option, Counsel. Um, the 16th is a Wednesday and what I am inclined to do is set, whatever date I pick for a trial date set Expiration the same day to give this gentleman priority getting out. And, cases are going out on their trial dates, by and large, so long as the attorneys are available. Um, would it be beneficial to you to go out a day or two before the weekend and then have the weekend to do whatever last minute scrambling you have to do. I mean—

[FLINN'S COUNSEL]: It really doesn't make a difference to me, your Honor.

[JUDGE]: It's up to you.

[FLINN'S COUNSEL]: I still, we would ask that the case be set a little earlier. I know Mr. Flinn is anxious, it seems—

[JUDGE]: Sure.

[FLINN'S COUNSEL]: [T]hat six weeks is more than plenty of time for the State to be prepared in this. And, as I stated most of the investigations—

[JUDGE]: Well, I am, also, working around judicial conference and I'll be frank with you, I am trying to work it in as short a period of time as I can but still make it so that we're not back here again pushing for another week or two and I am trying to work around the judicial conference.

[FLINN'S COUNSEL]: When is the judicial conference?

[JUDGE]: It's in the beginning of October. So otherwise I would set it right in there. So how about October 15, that'll work for you? Anybody got any vacations I need to know about?

CP at 20-22 (quoted verbatim from unofficial transcript). The judge continued the trial for five weeks, until October 15, 2002. At trial, Flinn was acquitted of the attempted arson and malicious mischief charges but convicted of possession of an incendiary device.

¶4 Flinn appealed, arguing that the trial court violated CrR 3.3, the time for trial rule, by (1) continuing his trial without a showing of good cause and (2) considering the fall judicial conference in determining the length of the continuance. The Court of Appeals held that CrR 3.3 had not been violated in Flinn's case and affirmed his conviction.

*State v. Flinn*, 119 Wn. App. 232, 246-47, 80 P.3d 171 (2003). We granted review only on the issue of whether the trial court abused its discretion in granting the fourth continuance, allegedly violating the time for trial rule, CrR 3.3. *State v. Flinn*, 152 Wn.2d 1013, 101 P.3d 108 (2004).

## ANALYSIS

■ ¶5 "[T]he decision to grant or deny a motion for a continuance rests within the sound discretion of the trial court." *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004). "We will not disturb the trial court's decision unless the appellant or petitioner makes 'a clear showing . . . [that the trial court's] discretion [is] manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.' " *Id.* (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

■ ¶6 Under former CrR 3.3(c)(1) (2002), the rule in effect during Flinn's trial, a criminal defendant in custody must be brought to trial within 60 days of arraignment or the court must dismiss the case with prejudice.[1] Former CrR 3.3(c)(1), (i). The court may continue the case when required in the administration of justice. Former CrR 3.3(h)(2). However, the defendant cannot be substantially prejudiced by the delay and the court must state on the record or in writing the reasons for the continuance. *Id.*

¶7 Common law has clarified that "[i]n exercising its discretion to grant or deny a continuance, the trial court is to consider all relevant factors." *State v. Heredia-Juarez,*

---

[1] It is worth noting that the current time for trial rules are different from those in effect during Flinn's trial in 2002. The new provisions allow a trial court more flexibility in avoiding the harsh remedy of dismissal with prejudice, while simultaneously protecting a defendant's statutory time for trial rights. For example, the current rules provide for a 30-day buffer period such that whenever a period of time is excluded from computing the time for trial, the time for trial period "shall not expire earlier than 30 days after the end of that excluded period." CrR 3.3(b)(5). The rules now in existence also provide for a one-time "cure period" of 14 days (defendant in custody) or 28 days (defendant not in custody) that allows the court to bring a case to trial after the expiration of the time for trial period if the court commences the cure period within 5 days of the time for trial period's expiration, and the court makes a finding that the defendant will not be substantially prejudiced. CrR 3.3(g).

119 Wn. App. 150, 155, 79 P.3d 987 (2003). Allowing counsel time to prepare for trial is a valid basis for continuance. *State v. Campbell*, 103 Wn.2d 1, 15, 691 P.2d 929 (1984); *State v. Williams*, 104 Wn. App. 516, 523, 17 P.3d 648 (2001). Scheduling conflicts may be considered in granting continuances. *See Heredia-Juarez*, 119 Wn. App. at 153-55 (valid continuance granted to accommodate prosecutor's reasonably scheduled vacation). "[O]nce a valid continuance is granted, . . . the wise discretion of the trial court may be used in exceptional circumstances to set cases beyond the 60-day limit of CrR 3.3." *State v. Perez*, 16 Wn. App. 154, 156, 553 P.2d 1107 (1976).

¶8 Even though trial preparation and scheduling conflicts may be valid reasons for continuances beyond the time for trial period, court congestion is not. *State v. Mack*, 89 Wn.2d 788, 794, 576 P.2d 44 (1978). Defendants can be prejudiced by delay, no matter what the source. *Id.* at 793. Such delays are contrary to the public interest in prompt resolution of cases, and excusing such delays removes the inducement for the State to remedy congestion. *Id.* When the primary reason for the continuance is court congestion, the court must record details of the congestion, such as how many courtrooms were actually in use at the time of the continuance and the availability of visiting judges to hear criminal cases in unoccupied courtrooms. *State v. Kokot*, 42 Wn. App. 733, 736-37, 713 P.2d 1121 (1986).

¶9 Flinn asserts that the judicial conference was the sole reason for the continuance. Arguing that the judicial conference is equivalent to court congestion, Flinn states that the Court of Appeals created a "judicial conference exception" to the general rule that court congestion does not justify a continuance beyond the time for trial period. Suppl. Br. of Pet'r at 11. However, this is a mischaracterization of the record. The trial court granted the continuance after finding good cause—to allow the State to prepare for Flinn's diminished capacity defense—not because of the judicial conference. If the sole reason for the continuance were the judicial conference, then the

justification for the continuance would be similar to court congestion and the court would have to document the details of unavailable courtrooms and judges. Because the judicial conference was not the reason for the continuance, Flinn has not shown that the good cause found was manifestly unreasonable.

¶10 Because the continuance was granted for good cause, we will not second-guess the trial judge's discretion in placing the trial on the court's calendar. In this situation, a five week continuance was reasonable. First, the trial court granted three continuances at Flinn's request before this request by the State. Second, the trial judge offered to accelerate the trial date if the State was prepared in fewer than five weeks. And finally, the judge wanted to give the State ample preparation time to avoid yet another continuance. There is a point at which the length of the continuance would be unreasonable, but five weeks under these circumstances was not. When scheduling a hearing after finding good cause for a continuance, the trial judge can consider known competing conflicts on the calendar.

## CONCLUSION

¶11 The trial court did not abuse its discretion when it granted a continuance past the time for trial period in order to allow the State to prepare for the defendant's diminished capacity defense. Having found good cause, the trial court could consider availability of judges and courtrooms in deciding when to schedule. Accordingly, we affirm Flinn's conviction.

ALEXANDER, C.J., and C. JOHNSON, BRIDGE, and OWENS, JJ., concur.

¶12 CHAMBERS, J. (dissenting) — The purpose of CrR 3.3 is to prevent undue and oppressive incarceration prior to trial. *State v. Kingen*, 39 Wn. App. 124, 692 P.2d 215 (1984). Despite this mandate, Anthony Flinn, a mentally-chal-

lenged defendant, was kept in jail for almost five and one-half months before his trial began, at least three weeks of which were probably unnecessary. Because the trial court failed to make an adequate record demonstrating that the delay was unavoidable under the circumstances, I cannot conclude that the length of the delay was reasonable. I dissent.

¶13 I do not dispute the majority's assertion that the trial court had "good cause" to continue Flinn's trial on September 9, 2002. Allowing the prosecutor additional time to prepare against Flinn's diminished capacity defense was a legitimate reason to continue the trial. It is the court's failure to make appropriate findings and the length of that continuance to which I take exception. Flinn argues credibly that the sole reason for the *length* of the continuance was the difficulty of scheduling a trial around the judicial conference. This court has held that mere docket congestion and the unavailability of a judge do not constitute "good cause" to delay the commencement of a criminal trial. *See State v. Mack*, 89 Wn.2d 788, 576 P.2d 44 (1978). The unavailability of a judge because of a judicial conference is simply a form of docket congestion. The Court of Appeals has held that in order to allow meaningful appellate review of such delays, the trial court must establish a record of why "each superior court department is unavailable and whether a judge pro tempore could reasonably be used." *State v. Warren*, 96 Wn. App. 306, 310, 979 P.2d 915, 989 P.2d 587 (1999). Thus, even where good cause is shown to continue the trial initially, the trial court must show on the record that the delay is unavoidable.

¶14 To demonstrate that the five week delay of Flinn's trial was reasonable under the circumstances, the trial court should have made a finding that no other judges, judges pro tempore, or courtrooms were available to accelerate Flinn's trial. Without such a finding, we have no way of knowing whether such a lengthy continuance was unavoidable.

¶15 On September 9, 2002, the State indicated that it would need "a couple of weeks" to do an independent psychological evaluation of Flinn. The trial court then continued the trial by *five* weeks. While there is no bright-line test for determining whether the length of a proposed continuance is appropriate, the majority is correct that reasonability should guide the trial court's discretion. Unless delay is required in the administration of justice, however, the criminal court rules provide the default standard for gauging reasonableness: an in-custody defendant *shall* be brought to trial within 60 days of his arraignment. Former CrR 3.3 (2002).

¶16 Despite the majority's implication, the fact that Flinn had previously requested three continuances is no indication that he was not anxious to get the trial started.[2] During the September 9, 2002, hearing, after the court asked counsel whether October 15, 2002, would be an acceptable date for the trial to begin, Flinn himself stated, "No, I'm in custody . . . [s]o, I would like to speed this up as soon as possible." Clerk's Papers at 22. Thus, the trial court was aware that Flinn himself did not consent to the length of the delay. The trial court's proposed solution to Flinn's concern was to allow *the prosecution* to accelerate the trial if it was ready to proceed before the five weeks were up. This utterly failed to prevent undue and oppressive incarceration prior to trial. Merely allowing the State unilaterally to decide to speed up the trial does not make the five week continuance reasonable since it is the *court's* responsibility to ensure compliance with the rule, not the prosecutor's.

¶17 The trial court's suggestion that it wanted to give the State ample time so as to avoid the need for another continuance also does not impute reasonableness into the length of the delay. It is the oppressive nature of lengthy incarceration prior to conviction with which we ought to be

---

[2] Those continuances were used by Flinn's counsel to prepare his defense of diminished capacity, a defense that ultimately led to his acquittal on two of the three offenses with which he was charged.

concerned, not the minor inconvenience of holding a hearing to determine if sufficient cause exists to give the parties additional preparation time.

¶18 Since the trial court did not explore on the record other alternatives that might have obviated the need for or length of the continuance, nor did it explain why the defendant would not be prejudiced by being kept in custody for an extra 43 days,[3] the charges against the defendant should have been dismissed with prejudice.

¶19 I respectfully dissent.

MADSEN, SANDERS, and J.M. JOHNSON, JJ., concur with CHAMBERS, J.

Reconsideration denied July 7, 2006.

▬▬▬▬▬

[No. 75310-5. En Banc.]
Argued January 20, 2005.    Decided April 28, 2005.

---

[3] Flinn's trial commenced on October 22, 2002. *State v. Flinn*, 119 Wn. App. 232, 237, 80 P.3d 171 (2003).