[No. 24539-6-II.   Division Two.   January 12, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. BRUCE ERIC SMITH, *Appellant*.

*Rita J. Griffith* (of *Griffith & Cole, P.L.L.C.*), for appellant (appointed counsel for appeal).

*Gerald A. Horne, Prosecuting Attorney,* and *John C. Hillman, Deputy,* for respondent.

MORGAN, J. — Bruce E. Smith appeals convictions for second degree assault with a deadly weapon, unlawful possession of a firearm, and attempting to elude. We reverse.

In November 1998, Smith was living with Terri Ryce. Having previously been convicted of a felony, he could not legally possess a firearm.[1]

On November 23, 1998, according to the State's evidence, Smith terrorized Ryce by aiming a gun at her head and threatening to shoot her. When the police came, he entered a vehicle and tried to elude them.

On November 24, 1998, the State charged Smith with second degree assault with a deadly weapon, unlawful possession of a firearm, and attempt to elude.[2] He was arraigned that day and kept in custody. Trial was set for Wednesday, January 20, 1999, the fifty-seventh day of the sixty-day period for trial.[3]

On January 20, Pierce County did not have an available courtroom. Also, Smith's regular attorney was ill. The prosecutor told the court:

> This is the State of Washington vs. Bruce Eric Smith
>
> . . . .
>
> This matter was set for jury trial this morning. It's my understanding there are no courtrooms available, although we have not been dismissed by administration yet. . . . At this time Defense wishes to make a motion, Your Honor.[4]

Defense counsel then asked "for a five-day continuance"[5] on the ground that his colleague, the defense attorney

---

[1] *See* RCW 9.41.040.

[2] The State also charged unlawful imprisonment, but it omitted that charge from a later amended information.

[3] *See* CrR 3.3.

[4] Ex. 2, p. 2.

[5] *Id.*

actually assigned to try the case, "was ill and could not be present."[6] Speaking for himself, Smith stated that he wanted to go to trial that day and would represent himself if necessary. He agreed to wait five days, however, when the trial court cautioned him about self-representation.

The trial court reset the trial for January 27 (five days later, excluding Saturday and Sunday). It stated orally that it was granting a "five-day emergency continuance because [the] attorney is ill."[7] It also signed a printed form stating "that good cause exists"[;] that "the defendant expressly consents to a continuance"; and "that a continuance is required in the due administration of justice and the defendant will not be substantially prejudiced in the presentation of the defense."[8]

When the case was called for trial on January 27, the prosecutor sought a "five-day good-cause continuance"[9] based on court congestion. The discussion was as follows:

[PROSECUTOR]: Next is State vs. Bruce Smith.

. . . .

Your Honor, this matter was scheduled today for a jury trial. At this point in time I have received a notice from . . . the [court] coordinator, that there are no judges or courtrooms available in which to try this case this afternoon. The State is requesting a five-day good-cause continuance based on that.

THE COURT: Counsel?

[DEFENSE COUNSEL]: . . . We . . . object to the setting of any trial date beyond today and move for dismissal with prejudice.

. . . .

There are 19 departments here, and . . . there's kind of a blanket statement here on the record that there are no courts, but we really don't know what that statement is based on. There are 19 courts.

---

[6] *Id.*

[7] *Id.* at p. 9.

[8] Clerk's Papers at 110.

[9] Report of Proceedings (Jan. 27, 1999) at 2.

COURT: Actually, there are 20.

[DEFENSE COUNSEL]: We don't know whether they were asked. Some matters are sent to courts and pled out in five minutes. We don't know when the checks were made. We don't know whether all the judicial assistants were asked. We don't know how long those matters are going to go.

I believe that the case on court congestion also discusses the fact that if there are any other alternatives, the record should show that alternatives, any alternatives to that court system that may be available have been explored and utilized commissioners or pro tems that are available in the system. . . .

COURT: Commissioners? Counselor, I don't think you can have a court commissioner do a superior court trial in this case. With pro tems, you have to find a way to pay for them.

[PROSECUTOR]: And you have to have a courtroom.

THE COURT: Right.

. . . .

[DEFENSE COUNSEL]: . . . Your Honor, . . . the superior court will be in session tomorrow and Friday, and while preserving the objection to any setover, we ask that trial be set for tomorrow.[10]

COURT: Your objections are noted. I'm granting a five-day emergency continuance.

. . . .

COURT: *I think you're about No. 5 that I granted this afternoon for unavailability of courtrooms.* And your concerns about what the court administrator does, she checks on those. We have a procedure to follow that she does. That's why we have the slip of paper come over to verify.

[PROSECUTOR]: [The court coordinator] did go over what each court was doing . . . in terms of availability, and she doesn't expect that anything would come open tomorrow either.

COURT: Well, that's my understanding, and we're at 4:12 in the afternoon at this point.

---

[10] Assuming that the court had based its order of January 20 on CrR 3.3(h)(2), as the court's printed form implies, the sixty-day period for trial would have expired on Monday, February 1. CrR 3.3(c); CrR (g)(3); CrR 3.3(h)(2); CR 6; *State v. Worland*, 20 Wn. App. 559, 564-65, 582 P.2d 539 (1978); *State v. Curry*, 14 Wn. App. 775, 777 n.2, 545 P.2d 1214 (1976). Thus, "tomorrow and Friday" (and even the following Monday) were within the period for trial.

[PROSECUTOR]: And the record should also reflect that the last five-day continuance that put us over speedy trial was a continuance that was brought on behalf of the Defense.[11]

After this discussion, the court signed a printed form order continuing the trial to February 3, 1999 (five days, excluding Saturday and Sunday). The order recited that the State had moved for a continuance; that "no judges/court-rooms [are] available[;]" that "a continuance is required in the due administration of justice[;]" and that "the defendant will not be substantially prejudiced in the presentation of the defense."[12]

Trial started on February 3.[13] The State's witnesses testified to the facts set forth above. Smith denied assaulting Ryce or having a gun.[14] The jury convicted on all three counts.

The dispositive issue on appeal is whether Smith was timely tried within the meaning of CrR 3.3. CrR 3.3(c) requires that trial commence within 60 days of arraignment if the defendant is in jail. CrR 3.3(h)(2) and (g)(3) permit the trial court to grant a continuance, and to exclude the delay from the sixty days, "when required in the administration of justice and the defendant will not be substantially prejudiced." CrR 3.3(d)(8) permits the trial court to extend the time for trial in the following circumstances:

*When a trial is not begun on the date set* because of unavoidable or unforeseen circumstances beyond the control of the court or the parties, the court, even if the time for trial has expired, may extend the time within which trial must be held for no more than 5 days exclusive of Saturdays, Sundays, or holidays unless the defendant will be substantially prejudiced in his or her defense. The court must state on the record or in writing

---

[11] Report of Proceedings (Jan. 27, 1999) at 2-6 (emphasis added).

[12] Clerk's Papers at 105.

[13] The judge who presided over the trial was not the one who had presided over pretrial motions.

[14] Report of Proceedings (Feb. 9, 1999) at 48.

the reasons for the extension. If the nature of the unforeseen or unavoidable circumstance continues, the court may extend the time for trial in increments of not to exceed 5 days exclusive of Saturdays, Sundays, or holidays unless the defendant will be substantially prejudiced in his or her defense. The court must state on the record or in writing the reasons for the extension.[15]

CrR 3.3(i) mandates a dismissal with prejudice when CrR 3.3 is not followed.

In this case, Smith was timely tried only if the continuances on January 20 and January 27 were both proper. If the first continuance was not proper, the time for trial expired on January 25.[16] If the first continuance was proper but the second was not, the time for trial expired on either January 27 or February 1.[17] Smith's trial did not commence until February 3.

The parties agree that the January 20th continuance was proper. Under CrR 3.3(d)(8), CrR 3.3(h)(2), or both, the trial court had authority to continue the trial for at least five days,[18] based on defense counsel's illness.

---

[15] CrR 3.3(d)(8) (emphasis added).

[16] Smith was arraigned on November 24. The sixtieth calendar day thereafter was a Saturday, January 23. Thus, the 60-day period ended on Monday, January 25. *Worland*, 20 Wn. App. at 565; *Curry*, 14 Wn. App. at 777 n.2.

[17] If the first continuance was granted under CrR 3.3(d)(8), the time for trial was extended only to January 27 (five days exclusive of Saturday and Sunday). If the first continuance was granted under CrR 3.3(h)(2) and (g)(3), the time for trial did not include January 20-27; the sixtieth day fell on a Saturday, January 30; so the sixtieth day became Monday, February 1. *Worland*, 20 Wn. App. at 565; *Curry*, 14 Wn. App. at 777 n.2.

[18] Nothing herein means that on January 20, the trial court could not have continued this case for more than five days, based on CrR 3.3(h)(2), CrR 3.3(g)(3), and defense counsel's illness. *State v. Pomeroy*, 18 Wn. App. 837, 842-43, 573 P.2d 805 (1977) (holding a new speedy trial period begins when the original trial date is struck due to the illness of defense counsel); *see also State v. Greene*, 49 Wn. App. 49, 55-56, 742 P.2d 152 (1987) (finding that a deputy prosecutor's illness justifies a delay "in the administration of justice"); *State v. Colbert*, 17 Wn. App. 658, 663, 564 P.2d 1182 (holding continuance based on defense counsel's illness was "necessary to protect the [defendant's] due process rights"), *review denied*, 89 Wn.2d 1010 (1997); *State v. Perez*, 16 Wn. App. 154, 156, 553 P.2d 1107 (1976) ("once a valid continuance is granted . . . the wise discretion of the trial court may be used in exceptional circumstances to set cases beyond the 60-day limit of CrR 3.3"). It clearly could have, under CrR 3.3(h)(2). But it did not.

■ The parties dispute whether the January 27th continuance was proper. The State argues that court congestion justified a continuance of five more days under either CrR 3.3(h)(2) or CrR 3.3(d)(8). Smith argues that court congestion could not justify a continuance under either rule. We turn, then, to whether either rule can justify a continuance for court congestion.

CrR 3.3(h) was first effective on July 1, 1973.[19] It was then numbered as CrR 3.3(e), but it continues to have substantially the same meaning.

CrR 3.3(d)(8) was first effective on November 17, 1978.[20] It was then numbered as CrR 3.3(g), and it has since been expanded in regard to some of its details. It continues, however, to have substantially the same meaning as it did originally.

In 1971, before any part of CrR 3.3 had been adopted, the Washington Judicial Council's Task Force that drafted it commented as follows:

> [D]elay arising out of chronic trial docket congestion should not be grounds to delay the bringing of a defendant to trial within the time that is specified in this rule. The Task Force adopted the philosophy enunciated in the ABA Draft (at 27) that: (1) the defendant can be prejudiced by delay, whatever the source; (2) such delays are contrary to the public interest in the prompt disposition of criminal cases; (3) if congestion excuses the long delays, there is lacking sufficient inducement for the state to remedy congestion; and (4) the calendar problems which arise out of trying to make maximum use of existing facilities do not ordinarily require time beyond that otherwise allowed.[21]

In March 1978, a few months before CrR 3.3(d)(8) was adopted, *State v. Mack*[22] discussed whether a continuance

---

[19] CrR 3.3(h), 82 Wn.2d at 1125-27 (1973).

[20] CrR 3.3(d)(8) (former CrR 3.3(g)), 90 Wn.2d at 1152 (1978).

[21] CrR 3.3, cmt. of the Criminal Rules Task Force to Washington Judicial Council (1971).

[22] *State v. Mack*, 89 Wn.2d 788, 576 P.2d 44 (1978).

could be based on court congestion. JCrR 3.08, the district court counterpart to CrR 3.3(h), required the district court to convene the defendants' trials within 60 days. The district court proposed to delay the defendants' trials for longer than that, based on court congestion. When the defendants asked the superior court for a writ of prohibition, the superior court found that court congestion was "good cause" for delay, and thus denied relief. As the Supreme Court later described the superior court's ruling:

> [T]he [superior] court denied the petitions for a writ of prohibition after determining that "good cause" existed to allow trial dates more than 60 days after the appellants' appearances. The "good cause" in each instance consisted of "difficulties inherent in jury selection," "docket congestion," and the "trial schedules" of the judges of the courts of limited jurisdiction. . . . "[G]ood cause" also included a concern for minimizing expense. This concern was reflected in the courts' failure to use judges pro tempore, failure to "double" set cases, and failure to employ more efficient jury selection procedures or revised calendar preparation.[23]

The Supreme Court held that "JCrR 3.08 is to be interpreted consistently with its superior court counterpart, CrR 3.3."[24] It then went on to say:

> We now turn to respondents' contention that docket congestion constitutes "good cause" to justify the delayed trial settings . . . . We do not agree. . . .
>
> . . . .
>
> In accordance with the philosophy underlying JCrR 3.08, we hold that the docket congestion described as existing in [the district courts below] was not "good cause" to warrant setting appellants' trials beyond the mandated 60 days. Absent "good cause" for the delay, dismissal is required.[25]

Since *Mack*, several cases have held or noted that "court congestion is not good cause to continue a criminal trial

---

[23] *Mack*, 89 Wn.2d at 791.

[24] *Mack*, 89 Wn.2d at 793.

[25] *Mack*, 89 Wn.2d at 793-94.

beyond the prescribed time period," even under CrR 3.3(d)(8).[26] Some cases have suggested, however, that a showing of specific additional circumstances might warrant a contrary result.[27] At least two cases have overturned continuances because nothing more than routine congestion was shown.[28] At least two cases have approved continuances because trial counsel assigned to the present case was caught unexpectedly in another trial that did not finish.[29] One approved a continuance because the new trial date was "only 2 judicial days beyond the speedy trial expiration date," the defendant "did not allege any prejudice," and the defendant was offered but refused a pro tem judge within the time prescribed for speedy trial.[30]

*Mack* and these other cases demonstrate that *routine* court congestion cannot justify a continuance beyond speedy trial limits, under either CrR 3.3(h)(2) or CrR 3.3(d)(8). This is true because *routine* court congestion is antithetical to the due administration of justice, and neither unforeseeable nor unavoidable. If such congestion were sanctioned by CrR 3.3, the Washington courts would soon regress to the state they were in before 1973, a state that CrR 3.3 was adopted to correct. We assume, though we need not hold here, that *non-routine* congestion—congestion that is truly unexpected and unusual—can justify a continuance beyond speedy trial limits.

As far as the record shows here, the congestion on January 27 was purely routine. During the hearing on January 20, while the court was considering a continuance to January 27, defense counsel stated, "[T]hat date is

---

[26] *State v. Warren*, 96 Wn. App. 306, 309, 979 P.2d 915, 989 P.2d 587 (1999); *State v. Silva*, 72 Wn. App. 80, 84 n.4, 863 P.2d 597 (1993); *State v. Stock*, 44 Wn. App. 467, 473, 722 P.2d 1330 (1986); *State v. Kokot*, 42 Wn. App. 733, 736, 713 P.2d 1121 (noting both (h)(2) and (d)(8)), *review denied*, 105 Wn.2d 1023 (1986); *State v. Palmer*, 38 Wn. App. 160, 162, 684 P.2d 787 (1984).

[27] *Warren*, 96 Wn. App. at 310; *Kokot*, 42 Wn. App. at 737.

[28] *Warren*, 96 Wn. App. at 310; *Kokot*, 42 Wn. App. at 737.

[29] *Stock*, 44 Wn. App. at 472-73; *Palmer*, 38 Wn. App. at 162-63.

[30] *Silva*, 72 Wn. App. at 84-85.

already full."[31] During the hearing on January 27, the trial judge remarked, "I think you're about No. 5 that I granted this afternoon for unavailability of courtrooms."[32] The prosecutor related that a court staff person had found all twenty courtrooms to be unavailable, but no one showed how that was done, when it was done, or any other basis for the staff person's conclusion. Smith asked for a pro tem judge, which the trial court affirmatively declined to consider. Smith asked for trial the next day, without discernable response. Based on this record, we are constrained to hold that the trial court was not justified in delaying trial beyond speedy trial limits, and that dismissal with prejudice is the remedy required by CrR 3.3(i).

Reversed.

HOUGHTON, J., and WANG, J. Pro Tem., concur.

---

[31] Ex. 2, page 8.

[32] Report of Proceedings (Jan. 27, 1999) at 5.