# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49730-1-II |
| Respondent, | |
| v. | |
| LLEWELLYNE V. HOLCOMB | UNPUBLISHED OPINION |
| Appellant | |

LEE, J. — Llewellyne V. Holcomb appeals his convictions and sentence for first degree assault with a firearm enhancement, second degree assault with a firearm enhancement, tampering with a witness, and three counts of violation of a no-contact order. Holcomb argues that the trial court (1) violated the time for trial rule, (2) violated his constitutional speedy trial right, (3) erred in denying his CrR 8.3 motion to dismiss, and (4) abused its discretion in ordering his firearm enhancements to run consecutive to each other. We affirm Holcomb's convictions, but we reverse Holcomb's sentence and remand for resentencing.

## FACTS

A.    CHARGES AND ARRAIGNMENT

On October 8, 2015, the State charged Holcomb with two counts of first degree assault with firearm enhancements after Holcomb fired several shots into an occupied house. The trial

court set an initial trial date of November 30, 2015. The trial court then set bail, but Holcomb did not post bail and remained in custody.

B.      CONTINUANCES

Holcomb's case was continued several times over the next 11 months. From November 2015 to February 2016, Holcomb's case was continued three times by agreement of both parties. On March 10, 2016, the State moved for a continuance. The prosecutor was in trial in another case and would be unavailable the next two weeks. Defense counsel asked that trial be set on March 24 and acknowledged that the trial court had an upcoming recess in April. Defense counsel noted Holcomb's objection to the continuance. The trial court found good cause for a continuance because the prosecutor and the trial court were both in trial, granted the motion, and continued the trial date to March 24.

On March 22, Holcomb filed a CrR 3.6 motion to suppress the shell casings found in his home. On March 24, the State amended the information to include two counts of first degree assault with firearm enhancements, one count of tampering with a witness, and three counts of violation of a no-contact order.

That same day, the State moved for a continuance. The State had just received Holcomb's motion to suppress and needed time to respond. Also, one of the State's witnesses was unavailable that day. A defense witness was also unavailable until later in the day and additional forensic testing needed to be completed. Defense counsel proposed setting trial for April 25 after he returned from a conference. Defense counsel also noted Holcomb's objection to continuing the trial date. The trial court stated that it was starting trial in a different case that was 348 days old,

as compared to Holcomb's 168-day-old case. The trial court also stated that it had inquired into sending the case to another courtroom but none were available. The trial court found good cause for a continuance, granted the motion, and continued the trial date to April 28.

On April 28, the State moved for a continuance. The prosecutor represented that several officers were unavailable and that those officers were essential to responding to Holcomb's motion to suppress and for the State's case in chief. But the prosecutor said that he could make the case work without one of the deputies being available. Defense counsel objected to the motion for continuance. The trial court found good cause for a continuance because of the severity of the charges, the previous requests for continuances were from the defense, and the State's witnesses' unavailability. The trial court granted the motion and continued the trial date to June 1.

On June 1, Holcomb's defense counsel moved for a continuance because counsel was in trial on another case. Holcomb objected to the continuance. The State noted that it now believed that the deputy the State previously thought was not necessary was now a necessary witness and that deputy would not return from military leave until June 27. The trial court found good cause, granted the motion, and continued the trial date to June 2.

On June 2, the State moved for a continuance. The prosecutor represented that after interviewing another officer the prior week, he now believed a deputy the State previously thought was not a necessary witness was now a necessary witness. But that deputy would not be available until July 1. The prosecutor proposed continuing the trial date to July 1 or starting trial that day and completing as much of it as possible, then recessing until the deputy became available. The prosecutor noted that he attempted to have the deputy video call in but because of his military

status, that was not possible. Also, the prosecutor stated he was going to be in trial in another case before the trial court. The trial court confirmed that it was calling the prosecutor's other case for trial. The trial court noted that it had checked other courtrooms and that none were available, and there were a limited number of jurors. The trial court found good cause because the prosecutor was in trial in another matter before the trial court, granted the motion, and continued the trial date to June 16.

On June 16, the State moved for a continuance because the prosecutor and trial court were still in another trial. Defense counsel objected to a continuance. The trial court granted the motion and continued the trial date to June 21 because the prosecutor was in trial.

On June 21, the State moved for another continuance because the prosecutor and trial court were still in the other trial. Holcomb objected to a continuance. The trial court noted that the other trial was anticipated to end on June 23, granted the motion, and continued the trial date to June 23.

C.      TRIAL AND RECESSES

On June 23, the trial court made numerous attempts to reassign the case to the Criminal Division Presiding Judge because the trial could not be completed before the trial court's scheduled July recess, but there were no courtrooms available. Thus, the trial court called the case for trial and began hearing pre-trial motions in Holcomb's case, noting that recesses may be necessary to accommodate scheduling. The trial court held a CrR 3.6 hearing to suppress the shell casings found in Holcomb's home. The trial court concluded the CrR 3.6 hearing and other pretrial motions on June 29 and then recessed the trial due to the trial court's prescheduled July recess.

On July 18, the parties reconvened for a status conference. The prosecutor represented that he was starting trial in another murder case that day that was anticipated to last two weeks and he had a prescheduled vacation from August 4 to 6. Defense counsel noted that the CrR 3.6 hearing was not completed. Holcomb expressed his desire to begin trial that day. The trial court found that in the interests of justice, the murder case took precedence over Holcomb's case and that Holcomb would not be prejudiced in any way. The trial court continued Holcomb's case to August 8.

On August 8, the trial court set trial for September 7 because the trial court was out on "medical." Verbatim Report of Proceedings (VRP) (Sept. 12, 2016) at 296. On September 7, the trial court set the case over one day because the prosecutor was out sick. Defense counsel expressed Holcomb's continuing objection. The next day, the prosecutor was still out sick and requested the matter be set over until the following Monday, September 12. Defense counsel again expressed Holcomb's continuing objection. The trial court set the matter over to September 12.

On September 12, the State represented that it was ready to proceed without the deputy because the deputy's military leave was extended until October 2016. Holcomb waived his right to a jury trial.

Holcomb moved to dismiss the case under CrR 8.3 based on prosecutorial mismanagement of the case and the number of continuances. The trial court denied Holcomb's motion to dismiss finding that the State's representations to the trial court were in good faith and that Holcomb was not prejudiced. However, the trial court excluded the deputy's testimony. The trial court also denied Holcomb's CrR 3.6 motion.

Before resting its case in chief, the State moved to amend the information to include one count of second degree assault with a firearm enhancement—domestic violence, one count of first degree assault with a firearm enhancement—domestic violence, one count of tampering with a witness—domestic violence, and three counts of violation of a no-contact order pre-sentence— domestic violence. The trial court granted the State's motion to amend.

The trial court found Holcomb guilty as charged in the information amended at trial.

D. SENTENCING

The trial court sentenced Holcomb to low-end standard range sentences on all counts. The trial court suspended the sentence for the three violation of a no-contact order convictions for two years. The trial court also ordered the firearm enhancement sentences to run consecutive to the sentence on the felony convictions and to each other, stating, "I can't even do anything about that, so they are 60 months and they are consecutive because they're flat time on those." VRP (Dec. 2, 2016) at 17.

Holcomb appeals.

ANALYSIS

A. TIME FOR TRIAL

Holcomb argues that the trial court violated the time for trial rule by continuing his trial due to court congestion. Specifically, Holcomb raises issue with the continuances granted on March 24, April 28, and June 1, 2, 16, and 21.[1] We disagree.

---

[1] Holcomb also argues that the trial court erred by granting the continuances from late June through September. But these continuances are not subject to CrR 3.3. The trial court called Holcomb's case for trial on June 23 and began hearing pretrial motions. This satisfies the CrR 3.3 time for

" '[T]he decision to grant or deny a motion for a continuance rests within the sound discretion of the trial court.' " *State v. Flinn*, 154 Wn.2d 193, 199, 110 P.3d 748 (2005) (alteration in original) (quoting *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004)). We will not disturb the trial court's decision unless there is a clear showing that the trial court's discretion was manifestly unreasonable, or exercised on untenable grounds, or made for untenable reasons. *Id.* at 200.

Under CrR 3.3(a)(1), "It shall be the responsibility of the court to ensure a trial in accordance with this rule to each person charged with a crime." A defendant who is detained in jail shall be brought to trial within 60 days of arraignment. CrR 3.3(b)(1)(i). Certain periods are excluded from the time for trial including (1) unavoidable or unforeseen circumstances affecting the time for trial beyond the control of the court or of the parties and (2) continuances granted by the court. CrR 3.3(e)(3), (8). "A charge not brought to trial within the time limit determined under this rule shall be dismissed with prejudice." CrR 3.3(h).

Under CrR 3.3(f), a trial court may grant a continuance "when such continuance is required in the administration of justice and the defendant will not be prejudiced in the presentation of his

trial requirement. *State v. Vermillion*, 112 Wn. App. 844, 855, 51 P.3d 188 (2002), *review denied*, 148 Wn.2d 1022 (2003). Holcomb further argues that not subjecting the recesses after June 23 to CrR 3.3 allows the trial court to subvert the CrR time for trial rules. However, the test for determining whether recesses taken after trial begins requires showing the recess was requested or granted in bad faith and the recess prejudiced the defendant. *State v. Andrews*, 66 Wn. App. 804, 811-12, 832 P.2d 1373 (1992), *review denied*, 120 Wn.2d 1022 (1993); *see also State v. Edwards*, 68 Wn.2d 246, 258, 412 P.2d 747 (1966). Because Holcomb fails to make any argument regarding bad faith or prejudice regarding the recesses following June 23, we decline to address them as part of Holcomb's time for trial argument. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

or her defense." Court congestion is not good cause for a continuance beyond the time for trial period. *State v. Kenyon*, 167 Wn.2d 130, 137, 216 P.3d 1024 (2009). But "a showing of specific additional circumstances [may] warrant a contrary result." *See State v. Smith*, 104 Wn. App. 244, 252, 15 P.3d 711 (2001).

Holcomb's argument fails because the continuances were not based solely on court congestion. The March 24 continuance was granted to allow the attorneys to prepare for trial. The April 28 continuance was granted because of officer unavailability. And the continuances granted in the beginning of June were because the attorneys were in trial on other cases. Because there were specific circumstances in addition to court congestion, the trial court did not violate CrR 3.3 by improperly granting continuances.

B.     CONSTITUTIONAL SPEEDY TRIAL RIGHT

Holcomb also argues that his constitutional speedy trial right was violated because of the delay caused by the continuances issued in his case. We disagree.

We review an alleged constitutional speedy trial right violation de novo. *State v. Ollivier*, 178 Wn.2d 813, 826, 312 P.3d 1 (2013). "If a defendant's constitutional right to a speedy trial is violated, the remedy is dismissal of the charges with prejudice." *State v. Iniguez*, 167 Wn.2d 273, 282, 217 P.3d 768 (2009).

We use the balancing test set out in *Barker*[2] to determine whether a constitutional speedy trial right violation has occurred. *Ollivier*, 178 Wn.2d at 827. The analysis is fact-specific and dependent upon the specific circumstances of the case. *Id.* None of the factors are sufficient or

---

[2] *Barker v. Wingo*, 407 U.S. 514, 530-31, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

necessary for a violation, but they assist our determination of whether a defendant has been denied the right to a speedy trial. *Id*. The nonexclusive factors are (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. *Id*.

1.  Length of Delay

The length-of-delay analysis is a two-part inquiry. *Id*. The first part requires an allegation that the delay was more than ordinary and presumptively prejudicial. *Id*. An eight month delay has been held to be presumptively prejudicial and sufficient to trigger a *Barker* analysis. *Id.* at 828. The second part requires consideration of the " 'extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.' " *Id* (quoting *Doggett v. United States*, 505 U.S. 647, 651, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992)).

Here, Holcomb meets the presumptively prejudicial threshold because the delay from arraignment to trial was 11 months. *See Id.* at 828. Thus, the delay is sufficient to trigger a *Barker* analysis.

However, the delay did not stretch for a significant amount of time beyond the bare minimum needed to trigger such analysis. An eight month delay has been held to be sufficient to trigger a *Barker* analysis. *Ollivier*, 178 Wn.2d at 828. But here, the delay was only three months beyond the bare minimum. Moreover, the first four months of delay were attributable to Holcomb and the need for additional time to prepare his defense. Thus, this factor weighs against finding a speedy trial violation.

2.      Reason for Delay

Pretrial delay is often inevitable and justifiable. *Id.* at 831. As a result, "careful assessment of the reasons for the delay is necessary to sort the legitimate or neutral reasons for delay from improper reasons." *Id.* We look to each party's responsibility for the delay, and weigh the blameworthiness and the impact of the delay on defendant's right to a fair trial. *Id.* At one end, the defendant who requests or agrees to the delay waives his speedy trial rights. *Id.* At the other end, when the government deliberately delays the trial to frustrate the defense, such conduct will be weighed heavily against the State. *Id.* at 832. "[I]f the delay is due to the government's negligence or overcrowded courts," the delay is also weighed against the State, but to a lesser extent. *Id.*

Here, Holcomb was responsible for the initial delays. The first four months of delay were attributable, at least in part, to Holcomb. These initial delays are weighed against finding a speedy trial violation.

Delays over the next seven months were primarily attributable to the State and the trial court. These delays were based on witness unavailability, scheduling conflicts, and sickness, and they appear closer to the middle of the spectrum, rather than towards the end of deliberate delay. *Id.* Thus, on balance, this factor weighs against finding a speedy trial violation.

3.      Assertion of Right

Assertion of the speedy trial right is important in the inquiry. *Id.* at 838 Here, Holcomb consistently objected to continuing his trial. Holcomb's assertion of his right to speedy trial was consistent. Thus, this factor weighs in favor of finding a speedy trial violation.

4.      Prejudice

"A defendant ordinarily must establish actual prejudice before a violation of the constitutional right to a speedy trial will be recognized." *Id.* at 840. Such prejudice may consist of (1) oppressive pretrial incarceration, (2) anxiety and concern, and (3) the possibility of an impaired defense due to fading memories and loss of exculpatory evidence. *Id.* Courts have generally presumed prejudice is sufficient in cases of extraordinary delay lasting at least five years or when the government's conduct is more egregious than mere negligence. *Id.* at 842. "This analysis requires a showing of particularized prejudice when shorter delays and no government bad faith are involved." *Id.*

Here, the period of delay was insufficient to presume actual prejudice. *See Id.* (Presumed prejudice is generally found in cases of extraordinary delay lasting at least five years or when the government's conduct is more egregious than mere negligence). Thus, prejudice cannot be presumed, and Holcomb must make a particularized showing.

First, Holcomb fails to show that the 11 months he spent incarcerated was oppressive. *See Id.* at 844 (periods of incarceration 19, 22, and 27 months are not oppressive). Second, Holcomb fails to show that he experienced any unusual anxiety or delay. With delay, anxiety and concern " 'is always present to some extent, and thus absent some unusual showing is not likely to be determinative in defendant's favor.' " *Id.* at 845 (quoting Wayne R. LaFave, Jerold H. Israel, Nancy J. King & Orin S. Kerr, Criminal Procedure §18.2(e) (3d ed. 2007) (footnote omitted). Third, Holcomb fails to show that his defense was impaired. Holcomb argues that the delay impaired his defense because he was unable to question the deputy before the court decided his

motion to suppress and that the delay caused him to waive his right to a jury trial. However, the deputy was unavailable due to military service and there is no evidence in the record supporting Holcomb's claim he waived his right to a jury trial because of the delay.

5. Balancing Factors

Balancing the *Barker* factors clearly weighs against finding a speedy trial violation. Although Holcomb may have consistently asserted his right to speedy trial, the delay was not unduly long; the reasons for the delay were either attributable to the defense for trial preparation, legitimate, or neutral; and Holcomb fails to show actual prejudice. Therefore, we hold that Holcomb's constitutional right to speedy trial was not violated.

C.  PROSECUTORIAL MISMANAGEMENT

Holcomb argues that the trial court erred when it denied his CrR 8.3 motion to dismiss because of prosecutorial mismanagement. We disagree.

We review a trial court's decision on a motion to dismiss a criminal prosecution due to governmental misconduct for an abuse of discretion. *State v. Brooks*, 149 Wn. App. 373, 384, 203 P.3d 397 (2009). A trial court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or made for untenable reasons. *Id.*

Under CrR 8.3(b), "The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial." The defendant must also show that the mismanagement actually prejudiced his right to a fair trial, which may include his right to a speedy trial. *Brooks*, 149 Wn. App. at 384. However,

"dismissal under CrR 8.3 is an extraordinary remedy, one that the trial court should use only as a last resort." *Id.*; *see, e.g.*, *State v. Michielli*, 132 Wn.2d 229, 245-45, 937 P.2d 587 (1997).

Here, even if the State mismanaged the case in terms of the deputy's availability, Holcomb fails to show actual prejudice. Holcomb argues that he was prejudiced because his right to a speedy trial was violated. But as explained above, Holcomb's right to a speedy trial was not violated. Therefore, Holcomb fails to show prejudice required under CrR 8.3. Accordingly, the trial court did not abuse its discretion in denying Holcomb's CrR 8.3 motion.

D.      EXCEPTIONAL SENTENCE

Holcomb argues that the trial court abused its discretion in imposing his sentence because it misunderstood its sentencing authority. We agree.

In *State v. McFarland*, 189 Wn.2d 47, 55, 399 P.3d 1106 (2017), our Supreme Court held that when multiple firearm enhancements result in a presumptive sentence that is clearly excessive, the trial court may run the firearm enhancements concurrently as part of an exceptional mitigated sentence under RCW 9.94A.535(1)(g). And even in cases where a defendant did not request an "exceptional, mitigated sentence," remand is appropriate when the "record suggests at least the possibility that the sentencing court would have considered imposing concurrent firearm-related sentences had it properly understood its discretion to do so." *McFarland*, 189 Wn.2d at 59.

Here, the trial court indicated that it "can't even do anything about" running the firearm enhancements consecutively. VRP (Dec. 2, 2016) at 17. Therefore, the record suggests that, had the trial court understood that it had the discretion to run the firearm enhancements concurrently as part of an exceptional, mitigated sentence, it may have done so. Accordingly, remand to the

trial court is the appropriate remedy despite Holcomb never requesting an exceptional, mitigated sentence.

We affirm Holcomb's conviction, but we reverse his sentence and remand to the trial court for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Maxa, C.J.

_____
Worswick, J.