**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILED**
**AUGUST 30, 2022**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  37497-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRADLEY KENNETH DENTON, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Beginning shortly after the adoption of CrR 3.3 and continuing through iterations of the rule thereafter, published decisions have held that court congestion and routine backlogs at the Washington State Patrol (WSP) Crime Laboratory do not justify continuing a defendant's time for trial beyond the period provided by the rule.  Unique circumstances have been held to support such continuances when supported by a detailed explanation of the congestion, efforts made to get around it, and a projection of the delay.

No. 37497-1-III
*State v. Denton*

Over Bradley Denton's objections, the trial court granted two continuances that extended his trial date four and a half months beyond the time-for-trial period provided by CrR 3.3. It did so on the basis of the prosecutor's representation that a nine-month turnaround by the crime lab was to be expected and was a "best case scenario," and his argument that the shorter time frame contemplated by CrR 3.3 is merely "aspirational."

The CrR 3.3 time limits are not merely aspirational. Presented with a record in which the sole basis for the two continuances was routine crime lab delay, we are left with no choice but to reverse Mr. Denton's convictions and direct the superior court to dismiss the charges with prejudice. We deplore this outcome given the violent nature of Mr. Denton's crimes, but it is the strict remedy that drafters of the rule perceived as needed to ensure that criminal cases will be promptly prepared for trial and heard.

## FACTS AND PROCEDURAL BACKGROUND

Felicia Denton divorced the defendant, Bradley Denton, in 2012. The couple later reconciled but Mr. Denton resumed using drugs—in particular, methamphetamine—and Felicia[1] ended the relationship for good after about a year. When Mr. Denton persisted in contacting her, Felicia obtained an order for protection against him in April 2018.

That fall, Felicia, who had moved to Tumwater, returned to Yakima for a family gathering. Mr. Denton was aware she was in town. On the morning after the family

---

[1] Given the common last name, we refer to Felicia Denton by her first name for clarity. We intend no disrespect.

No. 37497-1-III
*State v. Denton*

gathering, October 7, 2018, Mr. Denton arrived uninvited at the home where Ms. Denton

and other family members were staying.  The Dentons' two children and Felicia's sister

were in the living room; Felicia's sister was sleeping, but the children were awake.

Felicia's brother and family lived in the basement and might have been present when Mr.

Denton arrived.

After being let in, Mr. Denton went directly to the room where Felicia had been

sleeping, entered, and locked the door behind him.  He angrily questioned her about who

she had been with and where she had been the prior evening and then became violent.  He

slapped her several times and then started choking her.  Felicia later testified at Mr.

Denton's trial that as he was doing this, "He—kept telling me that I was going to listen to

everything that he said, I was going to do everything that he said."  1 Report of

Proceeding (RP) at 436.[2]  She testified that frightened, she "kept saying, 'Okay.'"  1 RP

at 439.  Mr. Denton told her that she and their children "were not going back to

Tumwater, we were going to stay here, we were going to be a family."  1 RP at 437.

Mr. Denton then took off his clothing and pulled off the pants Felicia was wearing,

at which point Felicia claims she was crying uncontrollably.  As she told him to stop and

not to hurt her, he got on top of her and raped her.  Felicia did not call out for help or

---

[2] The appellate record includes three verbatim reports of proceedings.  We refer to
the volume first filed, which reports the trial, sentencing, and several hearings, as "1 RP";
the second-filed volume, which reports five additional hearings, as "2 RP"; and the last-
filed volume, which reports one additional hearing, as "3 RP."

3

No. 37497-1-III
*State v. Denton*

fight him, other than to grab his arm when he was choking her. She ended that resistance when he told her to "not fucking touch him." 1 RP at 443-44.

Immediately after Mr. Denton left, Felicia drove back to Tumwater with her children, despite having had plans to spend the afternoon with family in Yakima. She reported the assault to the Tumwater Police Department on October 9. An officer took a recorded statement, arranged for Felicia to undergo a sexual assault examination, picked up the clothing Felicia had been wearing when assaulted, and then referred the matter to the Yakima Police Department.

About a week later, Mr. Denton, who had been arrested for unrelated reasons and was incarcerated in the Yakima County Jail, placed a phone call to Felicia. She did not accept the first call, but after speaking with a Yakima police detective, she accepted three calls from Mr. Denton on October 17 and a fourth call on October 19.

On October 26, Mr. Denton was charged with assault in violation of a protection order, second degree rape, and two counts of misdemeanor violation of a protection order—one count for October 17, and one for October 19. All were charged as domestic violence offenses. Mr. Denton was arraigned on November 7, 2018, with trial set for December 31.

*December 27, 2018—Omnibus hearing and first continuance*

The omnibus hearing had been set for December 20, 2018, but was continued to December 27 because Mr. Denton's court-appointed lawyer was in the hospital. His

4

No. 37497-1-III
*State v. Denton*

lawyer remained unable to attend on the 27th, so Mr. Denton was represented by stand-in counsel.

At the December 27 hearing, the prosecutor asked that trial be continued, explaining that "the state is waiting on additional follow-up, including the results of a sexual assault nursing examination report along with the laboratory examination on clothing, which is—DNA,[3] some other supplemental discovery out of Harrison County is what we're waiting on right now." 1 RP at 6. He represented that items had been sent to the crime lab at around the time of the November 7 arraignment. He asked that an omnibus hearing be set for January 23, "at which point . . . we'll have a better idea of where we are with respect to the follow-up discovery, with a trial date about a month out on 2/25." 1 RP at 7.

Stand-in counsel was unable to address any prejudice to Mr. Denton from a continuance, stating, "I know nothing about the case, your Honor." 1 RP at 8. When Mr. Denton was addressed directly, he said he was contesting the continuance and did not want to waive his speedy trial right. After hearing from the parties, the trial court granted the continuance over Mr. Denton's objection.

The prosecutor had expressed concern about the health problems affecting Mr. Denton's court-appointed lawyer, so the court set a status conference for the following week to hear more about the lawyer's condition.

---

[3] Deoxyribonucleic acid.

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37497-1-III
*State v. Denton*

*January 3, 2019—Status conference and disqualification of counsel*

On January 3, 2019, the court heard a motion filed by appointed counsel (who was absent) asking to be disqualified for health reasons. Mr. Denton was represented by stand-in counsel. The following exchange occurred:

> THE COURT: . . . Mr. Denton, you've discussed the disqualification of [your appointed attorney]?
>
> MR. DENTON: Yeah. Yes.
>
> THE COURT: Any objection to that?
>
> MR. DENTON: I prefer not be—waive my speedy rights but I don't have an option, right?
>
> THE COURT: Well, you can continue to wait for [your lawyer's] recovery; but I don't know that that's in your best interest.
>
> . . . .
>
> MR. DENTON: We can go with it. It resets the sixty days, right?
>
> THE COURT: Yes.
>
> MR. DENTON: Yeah
>
> THE COURT: It'll reset it effective today.
>
> [PROSECUTOR]: Like I said, the sooner you do it—
>
> . . . .
>
> —if you wait two weeks and he still can't come back then you're gonna have to—they're going to disqualify him then and then you'll be sixty days from then.
>
> MR. DENTON: —Okay.
>
> [PROSECUTOR]: So, get her done soon. Rip the band aid off.
>
> MR. DENTON: Mmm hmm. [Affirmative]. Alright. No problem.
>
> THE COURT: Mr. Denton, I've signed the order and [the prosecutor] will move heaven and earth to try to get you an attorney here soon.

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37497-1-III
*State v. Denton*

3 RP at 4-5 (last alteration in original).

> *January 29, 2019—Omnibus hearing and further continuance*

At an omnibus hearing on January 29, 2019, Mr. Denton's newly appointed lawyer reported that the State had filed an amended information whose reading would be waived, and he asked that Mr. Denton's pleas of not guilty be entered. The amended information separately charged Mr. Denton's three phone calls on October 17 as misdemeanor violations of the protection order, bringing the total misdemeanor violations charged to four.

Asked by the court if there was an omnibus order, the prosecutor said there was not. Reminding the court that evidence had been sent to the state crime lab in early November, the prosecutor explained:

> Based on my experience and what I've been told by other attorneys in my unit, generally for rape kits involving DNA analysis get back—you know, best case scenario is somewhere around nine months. Potentially (inaudible) but right now that's—that's kind of [the] time line we're looking at.
> So, whatever the results of those tests may be could be dispositive on what type of defense [Mr. Denton] chooses to assert at trial.
> So, I don't think either [defense counsel] or I would be prepared to enter an omnibus order at this stage.

2 RP at 5. He asked the court to continue trial on this basis.

Defense counsel told the court, "Mr. Denton would like to get this case over with and therefore he is objecting to continuance," and "I can certainly try this case without the DNA." 2 RP at 6-7. The court asked if the State could try the case without the DNA,

7

No. 37497-1-III
*State v. Denton*

and the prosecutor answered, "No." 2 RP at 7. The court observed that if Mr. Denton

defended on the basis that there was sex, but it was consensual, the DNA evidence would

be cumulative, but if he contested that sex occurred, "that DNA evidence is potentially—

paramount to the state's case." *Id.* Asked if Mr. Denton had settled on a defense, his

lawyer answered that it was presently a general denial.

The court continued trial to June 17 over Mr. Denton's objection, explaining,

> Court finds that there is no prejudice to the defendant's presentation
> of his defense. In fact, the evidence may well be exculpatory. The delay in
> this case is brought on by the state's efforts, reasonable efforts to get DNA
> testing performed by the state crime lab, and that has been delayed.

2 RP at 8.

> *May 21, 2019—Omnibus hearing and further continuance*

At the May 21 omnibus hearing, defense counsel informed the court:

> I think trial's set for June 17th. State's moving to postpone—the trial to
> July 29th and the readiness to July 3rd—
>
>      . . . .
>
>      . . .—I believe it's because they're awaiting DNA test results.
>
>      My client is opposed to that. This matter has been pending since
> October—

2 RP at 9. Defense counsel said an omnibus report had been prepared, and continued:

> Anyway, this matter's been pending for seven months. I think that's ample
> time for the crime lab to have gotten this testing done. It appears to me the
> state did make a request for the testing in a timely fashion, so I can't—
>
>      . . . .

8

No. 37497-1-III
*State v. Denton*

. . .—fault the prosecution for that. I can, however, fault the crime lab. My client does have a right to a speedy trial under Criminal Rule 3.3 and I don't think that the crime lab can trump or frustrate that, and therefore we are opposed.

2 RP at 10.

Asked to respond, the prosecutor told the court:

[PROSECUTOR]: . . . Essentially I spoke with Mr. Dixon at the Vancouver crime lab yesterday,—

THE COURT: Okay.

[DEFENSE COUNSEL[4]]: He stated it would be another four to six weeks to get the results back on the sexual assault kit and—

THE COURT: Did he say—

. . . .

. . .—what was taking so long?

[PROSECUTOR]: It's—I understand there is a substantial back-up. So as soon as I spoke to him I said, "Well, can we make it a rush," and this is—this is essentially what is going to make it a rush, is four to six more weeks.

So this is—this is the situation we're in. This—this evidence is essential to the state's case, given the nature of the charges. I understand this is within the aspirational guidelines—Without knowing the—the defense—Obviously if the defense were going to be that this was a consensual sexual contact that would be one thing, then this would be less essential. But without having any affirmation as to what the defense is going to be ahead of time, having this evidence is essential.

2 RP at 10-11.

---

[4] The report of proceedings identifies defense counsel as the speaker, but the context suggests that this statement was made by the prosecutor.

9

No. 37497-1-III
*State v. Denton*

When the trial court asked if there was a proposed scheduling order, defense counsel said one had been prepared, but reminded the court, "[O]bviously this is contested." 2 RP at 12. Addressing Mr. Denton, the court said:

> THE COURT: . . . I understand that you're anxious to get this taken care of sooner than later. It looks like the arraignment took place in November, so the aspirational guidelines are running, although it is a Class A felony. So, we're usually looking at trying to get these tried within a year.
> The request by the state leads the court to believe that the continuance is required in the administration of justice, and the defendant would not be prejudiced in the presentation of his defense, although I— I'm concerned that he has been waiting for some period of time; I'd like to see this get moving. But I think we're held hostage by the crime lab.
> So, continuance is necessary for DNA analysis on sexual assault kit and the victim's clothing,—completed within four to six weeks. So for those reasons, over the objection of Mr. Denton I'm going to set a readiness hearing on July 7th—
>
> . . . .
>
> THE COURT: Excuse me—Third. Which is a Wednesday. And that sets trial for 7/29.

2 RP at 12-13.

*July 26, 2019 readiness hearing and further continuance*

By the readiness hearing on July 26, DNA results had been delivered. Mr. Denton's lawyer told the court it did not appear the case would settle, "we have some more work to do to prepare for trial," and that he and the prosecutor were asking that the trial be continued to November 4. 2 RP at 16. He added, "Mr. Denton is opposed." *Id.* Invited by the court to address the request, Mr. Denton said he was "[a]bsolutely"

10

No. 37497-1-III
*State v. Denton*

opposed to continuing the trial. 2 RP at 18. The court granted a 98-day continuance to November 4.

The lawyers were not available for trial on the November 4 date and a continuance to January 6 was requested, this time with Mr. Denton's agreement. All but one of the Yakima County judges had recused from the case and on January 3 the court relied on the 30-day buffer period to set the trial for January 21, 2020, before the one available judge—a trial date that was 15 months after Mr. Denton's arraignment.[5]

The jury found Mr. Denton guilty of all charges.

Based on an offender score of 8, the court sentenced Mr. Denton to concurrent sentences of 230 months to life for the second degree rape, 60 months for the assault in violation of the protection order, and 364 days on each of the misdemeanor violation of a protection order counts. It imposed lifetime community custody upon his release from total confinement. Mr. Denton appeals.

## ANALYSIS

Mr. Denton makes five assignments of error but one proves dispositive: his rule-based challenge to the 15-month delay between his arraignment and trial.

---

[5] The prosecutor had informed the court in November 2019 that Felicia had been employed in the Yakima County Superior Court clerk's office for eight years, until 2016, which might lead to judicial recusals.

11

No. 37497-1-III
*State v. Denton*

I.      THE TRIAL COURT ABUSED ITS DISCRETION UNDER CrR 3.3 BY GRANTING
        CONTINUANCES BASED ON EVIDENCE OF ROUTINE ADMINISTRATIVE DELAY BY
        THE WSP CRIME LAB

"The purpose underlying CrR 3.3 is to protect a defendant's constitutional right to a speedy trial." *State v. Kenyon*, 167 Wn.2d 130, 136, 216 P.3d 1024 (2009) (citing *State v. Mack*, 89 Wn.2d 788, 791-92, 576 P.2d 44 (1978); *State v. Cummings*, 87 Wn.2d 612, 615, 555 P.2d 835 (1976)). "'[P]ast experience has shown that unless a strict rule is applied, the right to a speedy trial as well as the integrity of the judicial process, cannot be effectively preserved.'" *Id.* (alteration in original) (quoting *State v. Striker*, 87 Wn.2d 870, 877, 557 P.2d 847 (1976)). As our Supreme Court recently emphasized in *State v. Walker*, __Wn.2d ___, 513 P.3d 111, ¶14 (2022), CrR 3.3(a)(1) places the burden of ensuring a trial in accordance with the rule on the court.

CrR 3.3(b)(1) requires a defendant who is detained in jail to be brought to trial within 60 days of the "commencement date" specified in the rule. Mr. Denton was detained in jail, so the 60-day limit applies.

The initial "commencement date" is the date of arraignment. CrR 3.3(c)(1). Some events can result in its being reset; one such event is the disqualification of counsel, in which case the date of disqualification becomes the new commencement date. CrR 3.3(c)(vii). The parties agree that the disqualification of Mr. Denton's original lawyer for health reasons caused the commencement date for purposes of the rule to be reset to January 3, 2019.

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37497-1-III
*State v. Denton*

Certain periods are excluded in computing the time for trial. CrR 3.3(e). As relevant to this appeal, excluded periods include continuances granted by the court pursuant to CrR 3.3(f). CrR 3.3(e)(3). CrR 3.3(f)(2) authorizes the court to grant a continuance on the motion of the court or a party when a continuance "is required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense." The bringing of such a motion "by or on behalf" of a defendant waives the defendant's objection to the requested delay. *Id.* It is uncontested that while Mr. Denton personally contested the trial continuance ordered on July 26, 2019, it was based on a motion brought by his lawyer. Mr. Denton does not rely on the continuance granted on July 26 or any continuance thereafter as causing a time-for-trial violation; rather, he contends that the time-for-trial deadline expired without a lawful basis for continuances *before* July 26, entitling him to dismissal. *State v. Saunders*, 153 Wn. App. 209, 220, 220 P.3d 1238 (2009) ("[O]nce the 60 or 90 day time for trial expires without a stated lawful basis for further continuances, the rule requires dismissal and the trial court loses authority to try the case.").

"A charge not brought to trial within the time limit determined under [CrR 3.3] shall be dismissed with prejudice." CrR 3.3(h). The rule-based time for trial right differs from the constitutional speedy trial right in that the rule terminates litigation automatically upon a violation without regard to prejudice—unlike analysis under the federal and state constitutions, which is based primarily on the presence of prejudice.

13

No. 37497-1-III
*State v. Denton*

*State v. Rohatsch*, 23 Wn. App. 734, 736, 599 P.2d 13 (1979) (citing *State ex rel. Moore*

*v. Houser*, 91 Wn.2d 269, 588 P.2d 219 (1978)).

At issue is the 204-day delay between the reset January 3, 2019 commencement

date and defense counsel's motion for a continuance on July 26, 2019, and whether the

trial court abused its discretion in granting continuances over Mr. Denton's objection as

"required in the administration of justice."

We review an alleged violation of the time for trial rule de novo. *Kenyon*, 167

Wn.2d at 135. The decision to grant or deny a continuance rests in the trial court's sound

discretion and we will not disturb it on appeal unless there is a clear showing it is

manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. *Id.*

Misapplying the law constitutes an abuse of discretion. *State v. Agustin*, 1 Wn. App. 2d

911, 916, 407 P.3d 1155 (2018) (citing *State v. Neal*, 144 Wn.2d 600, 609, 30 P.3d 1255

(2001)).

Many published decisions under evolving versions of CrR 3.3 have held that

congestion or backlog in the courts or the state crime lab are rarely a rule-authorized

basis for delaying trial. In the exceptional case where they are, it has been based on a

detailed showing of the nature of the congestion or backlog, the steps the prosecution has

taken to get around the congestion or backlog, and a reasonable time frame within which

the case can be brought to trial. Mr. Denton invokes this case law on appeal, and

14

No. 37497-1-III
*State v. Denton*

particularly the substantially similar facts of the Washington Supreme Court's 1989

decision in *State v. Wake*, 56 Wn. App. 472, 783 P.2d 1131.

We will address *Wake*, but we begin with *State v. Mack*, 89 Wn.2d at 793, in

which the Washington Supreme Court held that docket congestion was not good cause

for scheduling a criminal trial beyond the 60-day time for trial required by JCrR 3.08,

whose interpretation it held should be consistent with its superior court counterpart,

former CrR 3.3 (1976). The court quoted with approval observations of the task force

that promulgated CrR 3.3 that a criminal defendant "'can be prejudiced by delay,

whatever the source,'" "'delays are contrary to the public interest in the prompt

disposition of criminal cases,'" and, particularly germane, "'if congestion excuses the

long delays, there is lacking sufficient inducement for the state to remedy congestion.'"

*Id.* (quoting CRIMINAL RULES TASK FORCE, WASHINGTON PROPOSED RULES OF CRIMINAL

PROCEDURE 32 (1971)). Rejecting the State's argument that pro tempore judges had not

been used because of reasonable concern for the cost, the court stated, "If this concern

were to 'justify' extended trial settings, the state or other governmental authority

involved would have no inducement to remedy the problem by providing financial relief,

authorizing additional judgeships, or by providing additional facilities." *Id.* at 795.

The decision in *Mack* was followed by this court in *State v. Kokot*, 42 Wn. App.

733, 713 P.2d 1121 (1986). Kokot executed one waiver of speedy trial for an assault

originally charged on June 16, 1983, on the basis of which his trial was set for trial on

15

No. 37497-1-III
*State v. Denton*

October 19, 1983. When the parties appeared for trial on the continued date, however, they were told that even giving preference to criminal cases, all courts would likely be in use for two weeks. When that timing led to conflicts for the State, the presiding judge continued Kokot's trial to November 14. Kokot's motion to dismiss based on a violation of former CrR 3.3 (1980) was denied.

This court reversed, observing that "[t]his state has always been strict in its application of the speedy trial provisions of CrR 3.3." *Id.* at 737 (citing *Striker*, 87 Wn.2d at 877). Focusing on "the primary reason why this challenged continuance was granted"—courtroom unavailability, or "in reality court congestion, which was condemned in *State v. Mack*," this court held

> [n]othing in the record indicates how many courtrooms were actually in use at the time of this continuance, the availability of visiting judges to hear criminal cases in unoccupied courtrooms, etc. Without these facts, a continuance granted for court congestion was an abuse of discretion.

*Id.* at 736-37.

A few years later, this court applied the reasoning of *Mack* and *Kokot* in holding that the trial court abused its discretion in granting a continuance because of congestion at the state crime lab. The congestion had prevented the State's drug expert from being available within the time-for-trial period. *Wake*, 56 Wn. App. at 473. The trial court explained in granting the continuance that it understood the crime lab to have a "substantial problem," with few analysts responsible for large geographical areas. *Id.* at

16

No. 37497-1-III
*State v. Denton*

474 & n.2. Given its personal knowledge of increasing drug crime, the trial court had explained, "'these kinds of witness problems are going to, going to occur.'" *Id.*

This court reversed, explaining:

> The rationale of *Mack* is equally applicable to the use of expert witnesses who are employed by the State and whose departmental budgets are subject to State budgetary constraints. As noted by the court here, the State has failed to keep pace with the growing number of drug cases, has an inadequate staff available for court testimony and, as a result, a logjam is being created. If congestion at the State crime lab excuses speedy trial rights, there is insufficient inducement for the State to remedy the problem.

*Id.* at 475; *cf. State v. Woods*, 143 Wn.2d 561, 583, 23 P.3d 1046 (2001) (citing *Wake*, 56 Wn. App. at 475, in stating, where a delay in producing results of DNA testing was alleged to amount to mismanagement, "[I]t is clear that conduct of employees of the crime laboratory, which is lacking in due diligence, constitutes actions on the part of the State.").

The court in *Wake* also criticized the poor record that had been presented in support of the continuance. The expert witness had not even been subpoenaed; the court observed that had that occurred, it would ensure a reliable record of the reason for his absence and provide the defense an opportunity to argue the merits of unavailability. *Id.* at 476. This court reversed Wake's controlled substance convictions and dismissed the charges. *Id.*; *cf. State v. Osborne*, 18 Wn. App. 318, 569 P.2d 1176 (1977) (continuance was granted to allow for completion of delayed crime lab work where State presented an affidavit of the State's chief criminalist that described reasons for the delay, efforts made

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37497-1-III
*State v. Denton*

to complete the work, and stated the work could be completed within less than three weeks following the scheduled trial date).

In *State v. Warren*, 96 Wn. App. 306, 979 P.2d 915, 989 P.2d 587 (1999), this court emphasized that if a problem of congestion is ever going to excuse delay beyond the time-for-trial period, the trial court should require a thorough explanation of the problem, the State's efforts to get around it, and must consider the likelihood that the requested delay will lead to further delays. The trial court in *Warren* had granted a State-requested continuance to the last day of the time-for-trial period to accommodate a prosecutor's conflicting out-of-town continuing legal education program. On that final day of the period, after waiting until 3:00 p.m. without assignment to a courtroom, the court continued the trial for two days, using a court form that recited that no courtrooms were available. It granted the continuance despite defense counsel's report that he was scheduled to begin a homicide trial in two days, and the judge in that case was unlikely to continue the homicide trial in order to accommodate Warren. Defense counsel proved to be correct, and Warren's trial began more than two weeks after the end of his time-for-trial period.

*Warren*, a Division Two decision, discussed *Kokot*, a Division Three decision, and *State v. Silva*, 72 Wn. App. 80, 863 P.2d 597 (1993), a Division One case in which the trial court "'attempted to follow the dictates of *Mack* and *Kokot*'" by carefully making a record of courtroom availability and offering to call in a judge pro tempore to try the case

18

No. 37497-1-III
*State v. Denton*

in an empty courtroom. *Warren*, 96 Wn. App. at 310 (quoting *Silva*, 72 Wn. App. at 84-85). The *Warren* court arrived at its own description of what a trial court must consider before continuing a trial beyond the time-for-trial period for reasons of court congestion:

> [T]o comply with *Mack*, in granting CrR 3.3(d)(8) continuances past the speedy trial period, the trial court must consider the length of the continuance and the likelihood that the continuance will result in additional delay; further, if additional delay is likely, the court should consider the probable length of such delay. Finally, to allow meaningful review, the court should establish some record of why each superior court department is unavailable and whether a judge pro tempore could reasonably be used.

*Id.* Because the trial court had not considered likely actual delay or provided any detailed explanation of court unavailability, Warren's conviction was reversed and the charges against him were dismissed.

In *State v. Howell*, 119 Wn. App. 644, 648, 79 P.3d 451 (2003), this court followed *Wake*'s holding that foreseeable administrative congestion at the state crime lab is an insufficient basis on which to grant a continuance under the time-for-trial rule, but found the delay in Howell's case to be extraordinary and unforeseeable. On June 12, 2002, with Howell's time-for-trial deadline only two days away, the trial court granted a four-day continuance over Howell's objection after it became apparent that test-fire results of a gun Howell was charged with possessing unlawfully would not be available in time for trial. The explanation for the delay provided to the court was congestion caused by the investigation of the Green River murders, "presenting 'a very unusual case in the State and perhaps United States, if not the world,' requiring the State to expend

19

No. 37497-1-III
*State v. Denton*

extraordinary resources." *Id.* at 648. The court held that the State could not have been

expected to anticipate the crush of work generated by the murder investigation, so the

reasoning of *Wake* did not apply.

CrR 3.3 was completely rewritten in 2003, based on recommendations by a task

force appointed by the Washington Supreme Court. The task force did not view its

proposed amendments as changing the provision on granting motions for continuances in

any material respect. The report stated in relevant part:

> *Proposed Subsection (f)(2) (Continuance-Motion By the Court or a Party).*
> This subsection is adapted from the existing provision authorizing
> continuances when required in the administration of justice and when the
> defendant will not be prejudiced. Two changes to the existing language are
> being proposed. The continuance should be to a date-certain, and the
> provision should be phrased in terms of whether the defendant is
> prejudiced, rather than "substantially prejudiced," by the continuance.

WASH. COURTS TIME-FOR-TRIAL TASK FORCE, FINAL REPORT § II.B (Oct. 2002)

(Discussion of Consensus Recommendations).[6]

Court congestion was discussed by the report, but not to suggest that it could ever

justify a trial continuance under the rule as amended. Rather, the report identified two

proposed "[c]hanges to address court congestion": the task force's proposed "30-day

buffer" period and a "cure" period. *Id.* § I.B.1 (Summary of Consensus

---

[6] Available at https://www.courts.wa.gov/programs_orgs/pos_tft/.

20

No. 37497-1-III
*State v. Denton*

Recommendations).  Both proposed extensions of the time for trial were adopted.  *See*

CrR 3.3(b)(5), (g).[7]

The report also discussed the task force's recommendation to "retain[ ] the

'hammer' of dismissal with prejudice," explaining, "This strict remedy, coupled with the

proposed creation of a reporting requirement, is needed to ensure that criminal cases will

be promptly prepared for trial and heard."  *Id.* § II.B (Discussion of Consensus

Recommendations).

Decisions dealing with challenges to trial continuances following the 2003

amendments have continued to rely on *Mack* and related cases as good law.  In *State v.*

*Flinn*, 154 Wn.2d 193, 200, 110 P.3d 748 (2005), the Supreme Court rejected the

appellant's contention that a continuance beyond the time-for-trial deadline had been

granted primarily due to court congestion, but it agreed that congestion would not have

been a valid basis for a continuance:

> Even though trial preparation and scheduling conflicts may be valid
> reasons for continuances beyond the time for trial period, court congestion
> is not.  *State v. Mack*, 89 Wn.2d 788, 794, 576 P.2d 44 (1978).  Defendants
> can be prejudiced by delay, no matter what the source.  *Id.* at 793.  Such
> delays are contrary to the public interest in prompt resolution of cases, and

---

[7] If any period of time is excluded pursuant to CrR 3.3(e), the allowable time for trial shall not expire earlier than 30 days after the end of that excluded period—the "buffer period."  CrR 3.3(b)(5).

The court may grant one final continuance of a case beyond the limit otherwise provided by the rule on a motion made within 5 days after the time for trial has expired—the "cure period."  CrR 3.3(g).  Where the defendant is detained in jail, this final delay shall be for no more than 14 days.  *Id.*

No. 37497-1-III
*State v. Denton*

excusing such delays removes the inducement for the State to remedy congestion. *Id.* When the primary reason for the continuance is court congestion, the court must record details of the congestion, such as how many courtrooms were actually in use at the time of the continuance and the availability of visiting judges to hear criminal cases in unoccupied courtrooms. *State v. Kokot*, 42 Wn. App. 733, 736-37, 713 P.2d 1121 (1986).

In *Kenyon*, the Supreme Court addressed whether the fact that one judge in a two-judge county was already presiding at a criminal trial and the other was on vacation could be distinguished from court congestion and justified as an "unforeseen circumstance[ ]," an excluded period that had been added by the 2003 rule amendments.[8]  167 Wn.2d at 135.

*Kenyon* rejected the trial court's characterization of the circumstances as an unforeseen circumstance, stating that they "amount[ ] to court congestion." *Id.* at 139. Like *Flinn*, it relied on *Mack* and *Kokot* as having continuing application; it also relied on

---

[8] According to the task force's report, the new excluded period for "unforeseen circumstances" at CrR 3.3(e)(8) incorporated language and concepts from the prior rule's five-day extension provision.  As explained by the report:

> By phrasing subsection (e)(8) in terms of existing language from another part of the current rule, the task force intends that appellate interpretations of that language continue to apply.  The term "unavoidable or unforeseen circumstances affecting the time for trial beyond the control of the court or the parties" should continue to include, for example, unexpected illnesses of defendants, attorneys, and judges, as well as natural disasters and other events requiring evacuation or closing of the courthouse.  Routine instances of court congestion would not be covered by this provision, but could instead be addressed with the proposed cure period.

TIME-FOR-TRIAL FINAL REPORT, *supra*, § II.B (Discussion of Consensus Recommendations).

22

No. 37497-1-III
*State v. Denton*

*Silva* and *Warren*. *See id.* at 137. Citing *Silva* and *Flinn*, the court held that a trial court can allow a continuance for court congestion in rare cases, where it carefully makes a record of its available and unavailable courtrooms, and identifies and offers any available judge pro tempore. *Id.* at 137-38 & n.3.

Finally, although not a time-for-trial case, the Supreme Court in *State v. Salgado-Mendoza*, 189 Wn.2d 420, 403 P.3d 45 (2017), applied many of the same principles. Salgado-Mendoza, who had been charged with driving under the influence, moved to suppress the testimony of the State's toxicology witness for governmental misconduct when the identity of the witness was not disclosed until the morning of trial. Before that, the prosecutor had disclosed the names of nine experts provided by the state crime lab, one of whom the lab would make available for trial. The delay "resulted from perennial staffing and resource shortages at the toxicology lab," which the court held did not excuse the prosecution of responsibility, since "pursuing disclosure of information the prosecutor does not have is literally the purpose" of the relevant discovery rule. *Id.* at 433-34. All members of the court concluded that Salgado-Mendoza had demonstrated misconduct, but the five-member majority affirmed his conviction because he failed to demonstrate actual prejudice, which (unlike CrR 3.3) the dismissal rule required. *Id.* at 433-39.

23

No. 37497-1-III
*State v. Denton*

The dissenters believed prejudice had been shown and observed that "[i]f we allow underfunding and congestion at the State's toxicology lab to excuse fair trial rights, there will be no inducement for the State to remedy the problem," citing *Wake*, 56 Wn. App. at 475. *Salgado-Mendoza*, 189 Wn.2d at 445 (Madsen, J., dissenting). "If the State wishes to prosecute crimes, it must put sufficient resources into that prosecution to ensure fairness to the individuals charged. Criminal defendants should not have to bear the burden of the State's inadequate funding." *Id.* at 446.

The problems that cases like *Mack* and *Wake* present for the current case are clear. At the hearings continuing trial in January and May 2019, the State and the trial court characterized the crime lab delays as expected and routine, and yet as sufficient reasons for continuing trial beyond the March 4 time-for-trial deadline over Mr. Denton's objections. *See* 2 RP at 5, 11-12 ("Based on my experience and what I've been told . . . best case scenario is somewhere around nine months"; "that's [the] kind of time line we're looking at"; "there is a substantial back-up"; and "we're held hostage by the crime lab."). Both the prosecutor and the trial court described the time-for-trial periods as "aspirational guidelines." 2 RP at 11-12. No detailed, admissible evidence of the reasons for the back-up, efforts taken to get around it, or a reasonably short time frame within which trial could be held was offered by the prosecutor or demanded by the court. The

24

No. 37497-1-III
*State v. Denton*

prosecutor's hearsay report on May 21 of what he had been told in a conversation with a crime lab representative the day before suggests it was only in that conversation (six months after items were delivered to the lab for testing) that the prosecutor asked if "[we can] make it a rush." 2 RP at 11.

The trial court abused its discretion in granting continuances beyond CrR 3.3's time limits in January and May 2019.

II.     DISMISSAL WITH PREJUDICE IS REQUIRED

The fact that DNA evidence may prove exculpatory, as the prosecutor and trial court observed when the continuances to Mr. Denton's trial were requested and granted, is not a basis for continuing the time for trial over a defendant's objection. The defendant may doubt the evidence will prove exculpatory. He or she may deem an early trial more important for other reasons. Either way, it is the defendant's right that the rule protects.

On appeal, the State suggests that because defense counsel joined in continuance requests beginning with the July 26, 2019 continuance, the invited error doctrine applies. It characterizes the defense as thereby "affirmatively assent[ing] to the error, materially contribut[ing] to it, or benefit[ing] from it." Br. of Resp't at 22. It cites no legal authority for the proposition that a defendant loses his right to complain of a time-for-trial violation by agreeing to a later postponement of trial, however. To the contrary, once the 60-day time for trial expires without a lawful basis for a continuance, the rule demands

25

No. 37497-1-III
*State v. Denton*

dismissal, and the trial court loses authority to try the case. *Saunders*, 153 Wn. App. at 220.

We recognize that just as the defense may reasonably need some time to respond to testing results of critical forensic evidence, the State reasonably needs some time to procure such results. But State requests for continuances must be supported by a better record. And until and unless CrR 3.3 is amended, the time allowed the State in all but unusual situations must bear some reasonable relation to a presumptive time for trial of 60 or 90 days. By analogy to the court congestion cases, in which the use of judges pro tempore is required to be offered, the use of certified private laboratories might be required if the WSP Crime Lab cannot provide a competitive turnaround time for forensic testing.[9]

Because the trial court abused its discretion in treating the record made by the State on January 29 and May 21 as requiring a continuance in the administration of justice, dismissal is required. *See* CrR 3.3(h) (a charge not brought to trial within the rule's time limits "shall be dismissed with prejudice"). We reverse Mr. Denton's

---

[9] Information that looks beyond the WSP Crime Lab's current performance would be helpful. *See, e.g.*, NAT'L INST. OF JUST., U.S. DEP'T OF JUST., REPORT TO CONGRESS: NEEDS ASSESSMENT OF FORENSIC LABORATORIES AND MEDICAL EXAMINER/CORONER OFFICES (Dec. 2019), https://www.ojp.gov/pdffiles1/nij/253626.pdf [https://perma.cc/Z7DY-MNRJ].

No. 37497-1-III
*State v. Denton*

convictions and remand to the trial court to dismiss the charges with prejudice under CrR 3.3(h).[10]

_____
Siddoway, C.J.

WE CONCUR:

_____
Fearing, J.

_____
Pennell, J.

---

[10] The State does not argue that the CrR 3.3(d)(3) objection requirement applies to the granting of a CrR 3.3(f)(2) continuance request over a defendant's objection that there is no lawful basis for a continuance, and we are satisfied it does not apply. Mr. Denton's objection was not that the particular "date set" was a problem; rather, he argued the trial court lacked a basis for setting trial for *any* date beyond the existing time-for-trial period.

To apply an objection requirement when the defendant has already argued that the trial court lacks a basis for ordering any continuance beyond the existing time-for-trial period would lead to absurd results. The argument already made in opposing the continuance would be required to be promptly noted to be argued again. And any further resettings of the trial date would require repeating the objection and hearing processes again and again.